**JEOFFROY MFG., Inc., Appellant,**

v.

**William T. GRAHAM, Appellee.**

**No. 16966.**

United States Court of Appeals
Fifth Circuit.

June 5, 1958.

S. Tom Morris, Amarillo, Tex., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for appellant.

Claude A. Fishburn, Orville O. Gold, Kansas City, Mo., Clayton Heare, Amarillo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal deals with the Graham patent No. 2,627,798, which is also the subject of an opinion entered today under the name of William T. Graham and Graham-Hoeme Plow Co. v. Cockshutt Farm Equipment Co., Inc., 5 Cir., 256 F.2d 358. It is between the two opponents who have already appeared in this Court in several different cases raising questions as to the validity of this patent and its infringement vel non by Jeoffroy.

As we have said in the other case just decided, the able trial judge has become an expert in the art of spring plow clamps of the Graham type. This naturally gives even more weight than is usually to be accorded to findings of infringement by the trial judge, for he has perforce had these very devices before him for days at a time, with the testimony of experts and argument of learned and able counsel, also by now completely steeped in the art, to assist him.

Following our decision in Jeoffroy Mfg. Co. v. Graham, 5 Cir., 219 F.2d 511, the District Court enjoined appellant from infringing 798 patent. Subsequently appellee brought contempt proceedings against Jeoffroy for violation of the injunction. The trial court heard evidence and saw a field demonstration and held broadly that several clamps manufactured and sold by Jeoffroy infringe the Graham patent.

The real crux of the case arises from an attempt by Jeoffroy to modify its clamps which had previously been adjudicated to be infringement, by giving them characteristics which Graham testified were identified with the prior art and the departure from which afforded Graham protection in his patent.

Specifically, Graham claimed in support of his 798 patent that when the shank was forced upward against the force of the spring his 798 patent was the first arrangement of parts that permitted lateral, vertical and longitudinal flexibility of the shank without undue wear on the parts. This he accomplished by leaving some space at the first point and by having the bolt at the front end in a hole somewhat larger than the size of the bolt itself. This afforded a firm connection without rigidity and permitted longitudinal motion and a flexing of the shank. Graham pointed out that the prior art taught only rigid fixation of the shank at the pivot point and at the forward end.

What Jeoffroy did, then, was to suspend the shank at the pivot point in a stirrup, with sufficient room for vertical movement, but he then, according to his testimony, undertook to eliminate this movement by the insertion of a set screw, which if tight, would, in fact, prevent the flexibility which Graham insisted was the principal end sought in his invention.

Graham alleged, and the court found, that when the Jeoffroy device was in use the flexibility remained. This was demonstrated by the field experiment and by motion pictures of the Jeoffroy clamp with the set screw in action. The picture was also viewed by us. It was plain that, whatever may have been intended or desired by the insertion of the set screw, in actual operation nothing used in the Jeoffroy modification prevented his clamp from operating in the same manner as does the Graham clamp. Since Jeoffroy admitted that "the literal words of both

claims of the 798 patent can be read upon the Jeoffroy structures" and since Jeoffroy uses the substance of the Graham invention, the court found in favor of the patentee in the contempt proceedings.

The language used by the trial court states clearly the basis for its findings and it is adopted by us in holding that these findings are supported by the evidence and may not be set aside as clearly erroneous:

"3.

"In adopting said variants, Plaintiff was acting in good faith to the extent that it actually thought that certain contentions and arguments of Defendant's counsel during previous patent litigation between the same parties had opened the door for Plaintiff to make some distinguishing modifications in its clamp structure by using set screws and bolt fastenings to attain rigid fixation of the shank adjacent the pivot point, and thereby gain protection for its spring clamp against any charge that same infringed the Defendant's patent.

"4.

"The set screw and bolt fastenings provide a rigid fixation of the shank adjacent the pivot point as long as the set screws or nuts are tight and when in that condition the action of the shank in the forward end is in degree materially different from that provided for in the patent structure. Furthermore, the set screw and bolt fastenings adjacent the pivot point provide a structure which is as rigid at that point as any of the prior art references except those in which the shank is welded to the pivot member. However, the arrangement and relative positioning of the members in operation is different than the prior art references and result in flexibility not possible therein.

"5.

"Jeoffroy placed decals on its plows advising the farmers to keep nuts thereon tightened at all times, but it has no reasonable expectation, despite the formality of its decals, that clamps of the Plaintiff's types would actually be used by farmers with a really rigid fixation of the shank at the pivot point, for such structures, to begin with, were adapted to easy and simple manipulation by removing or loosening set screws and loosening or reversing the bolted straps, or, at any rate, same predictably would become loosened from the play of strong forces during the normal rough usage of the clamps, as borne out by the proof that many farmers using the Jeoffroy equipment in rocky land were found with set screws and bolts loosened or missing, and with fully as much play between the shank and the stirrup as would be typical of the Graham structure in Patent 798. Evidently, the farmers using the Defendant's clamp generally must have liked it better in operation with some motion and play near the pivot point and habitually disused the set screws and bolted straps in tight position in favor of more latitude of motion for the shank.

"6.

"Since it was predictable at the time these modifications were adopted by the Plaintiff that they would not insure a really rigid fixation of the shank at the pivot point and would not eliminate the similar flexibility, as found in the Graham shank, such modifications did not change the real operation of its clamp, and, therefore, did not avoid infringement."

The judgment is affirmed.