**William T. GRAHAM and Graham Plow, Inc., Plaintiffs,**

v.

**JOHN DEERE COMPANY OF KANSAS CITY, a corporation, and Deere & Company, a corporation, Defendants.**

No. 12533-2.

United States District Court
W. D. Missouri, W. D.
March 18, 1963.

Fishburn & Gold, Kansas City, Mo., for plaintiffs.

Scofield, Kokjer, Scofield & Lowe, Kansas City, Mo., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for defendants.

GIBSON, Chief Judge.

On February 8, 1963, this Court entered its Memorandum Opinion, Findings of Fact, and Conclusions of Law in this cause. At that time the parties were granted ten days in which to suggest any proposed changes or modifications in the said opinion and findings. The suggested changes and modifications were duly filed by both parties, and duly considered by the Court, and certain changes and modifications were considered necessary by the Court. Therefore, the Memorandum Opinion, Findings of Fact, and Conclusions of Law entered herein on February 8, 1963, are hereby set aside and the following Amended Memorandum Opinion, Findings of Fact, and Conclusions of Law are entered in their place:

This is an action for infringement of United States Letters Patent Number 2,627,798, which was issued to plaintiff William T. Graham on February 10, 1953. The patent was issued for a "Clamp for Vibrating Shank Plows," and will hereinafter be referred to as the "798" patent. Plaintiffs seek a permanent injunction, an accounting, and damages. Defendants contend that the 798 patent was void or invalid because of lack of novelty or invention, because of anticipation, because of a prior use more than one year prior to the date of the application for such patent, and further because the subject matter of the patent would have been obvious to a person of ordinary skill in the art due to the status of the prior art. Defendants also assert the claim of "file wrapper estoppel," that is, that because of certain proceedings in the Patent Office during the processing of the 798 patent, plaintiffs are estopped to assert infringement by defendants. Defendants also contend that, if the patent is valid, it has not been infringed and defendants have filed a counterclaim seeking a declaratory judgment to the effect that the 798 patent is void and invalid.

Defendants rely on the prior patents and devices as showing the state of the prior art as follows:

### United States Patents

| Patent | Date of Issue | Patentee |
|---|---|---|
| 211,003 | Dec. 17, 1878 | Dunbar |
| 231,268 | Aug. 17, 1880 | Carter |
| 284,278 | Sept. 4, 1883 | Cobb |
| 287,965 | Nov. 6, 1883 | Rix |
| 417,775 | Dec. 24, 1889 | Drader, et al. |
| 503,288 | Aug. 15, 1893 | Moore |
| 1,141,804 | June 1, 1915 | Lamprell, et al. |
| 1,805,599 | May 19, 1931 | Roberts |
| 1,982,862 | Dec. 4, 1934 | Erdman |
| 2,029,249 | Jan. 28, 1936 | Noell, et al. |
| 2,493,811 | Jan. 10, 1950 | Graham (Plaintiff) |

### Foreign Patents

#### Australian

| | | |
|---|---|---|
| 1,056 | Mar. 19, 1926 | Prior |
| 111,910 | Nov. 8, 1940 | Traeger |

#### Danish

| | | |
|---|---|---|
| 57,391 | Mar. 18, 1940 | Petersen |

#### Prior Devices

1. A spring clamp devised, manufactured and marketed by Jeoffroy Mfg., Inc., Amarillo, Texas, as early as January 1948, such clamp being known as the Jeoffroy SC–580 spring clamp.

2. A spring clamp devised, manufactured and sold by Glencoe Manufacturing Co., Glencoe, Minnesota, said clamp having been made and tested as early as August 1949, offered for sale as early as March 1950, and actually sold and delivered as early as May 1950.

United States Letters Patent Number 2,493,811 was issued to plaintiff Graham for a previous similar device, and this patent will be referred to frequently in this opinion, although it is not directly in issue here. It will be referred to simply as the "811" Patent.

The 798 Patent has been the subject of litigation on several previous occasions. In Jeoffroy Mfg. Co., Inc. v. Graham, 219 F.2d 511, the 798 Patent was held valid and infringed by the United States Court of Appeals for the 5th Circuit, reversing the decision of the trial court that the patent was invalid. In Jeoffroy Mfg. Co., Inc. v. Graham, 256 F.2d 360, the 5th Circuit again held the 798 Patent infringed, affirming the findings of the trial court. And in Graham v. Cockshutt Farm Equipment, Inc., 256 F.2d 358, the 5th Circuit again found the 798 Patent valid, but not infringed, affirming the findings of the trial court.

It appears by stipulation that all of the prior patents and prior devices cited and relied upon by the defendants in the case at bar, except the Rix Patent Number 287,965, the Roberts Patent Number 1,805,599, and the Glencoe clamp device, were before the District Court and the Appellate Court in the first Jeoffroy case and all the prior art relied upon by defendants in the case at bar was before the District and Appellate Courts in the Cockshutt case.

The record shows that, of the prior patents and devices cited and relied upon by defendants in the case at bar, only the following patents were of record in the Patent Office proceedings on the 798 Patent:

### United States Patents

| | | |
|---|---|---|
| 417,775 | Dec. 24, 1889 | Drader, et al. |
| 2,014,451 | Sept. 17, 1935 | Pfeifer |
| 2,493,811 | Jan. 10, 1950 | Graham |

### Danish Patent

| | | |
|---|---|---|
| 57,391 | Mar. 18, 1940 | Petersen |

### Australian Patent

| | | |
|---|---|---|
| 111,910 | Nov. 8, 1940 | Traeger |

———◆———

None of the other patents relied on by defendants are of record in the Patent Office file with reference to the 798 Patent, nor are any prior devices on record in the Patent Office file. It should be noted that the United States Pfeifer patent, although of record in the Patent Office file, has not been cited by defendants in this case.

The Patent Office file wrapper in the 798 Patent discloses that Graham originally submitted his application with twelve claims. These claims were all rejected by the Patent Office, partially on the grounds that some of the claims failed to patentably distinguish from the 811 Patent, and partially on the grounds of lack of invention. Claims 13 and 14, which eventually issued as claims 1 and 2 of the 798 Patent, were then submitted by Graham to be substituted for the original twelve claims. These two claims, as finally issued, are as follows:

"1. In a plow having a frame and a ground working tool provided with a shank adapted to rock relatively to the frame when the plow is in operation in a forward direction, a mounting for pivotally attaching and supporting the shank of the ground working tool to a transverse member of the frame, the mounting including a fixed member adapted to be fixed to the transverse member of the frame and having a longitudinally extending underface terminating forwardly of the transverse member to which said mounting is adapted to be fixed, the fixed member having ears extending rearwardly from said underface at the sides thereof, a shank attaching member having an elongated plate portion provided with an upper face corresponding with and normally in contact with said underface of the fixed member and provided with a longitudinally extending underface in engagement with a corresponding upper face of the shank whereby the plate portion of the shank attaching member is between the shank and the fixed member, means connecting the elongated plate portion with the shank for maintaining the upper face of the shank in constant continuous contact with the underface of said plate portion of the shank attaching member, a transverse pin pivotally connecting the shank attaching member to the fixed member at the rear ends of said normally contacting faces and whereon the shank attaching member pivots upon rocking movement of the shank, a coil spring having one end seated on the forward end of the fixed member, and means having connection with the forward end of the shank and with the other end of the coil spring whereby the spring yieldably

maintains said normal contact of the upper face of the plate portion of the shank attaching member with the underface of the fixed member to maintain the normal plowing depth of the ground working tool.

"2. In a plow having a frame and a ground working tool provided with a shank adapted to rock relatively to the frame when the plow is in operation in a forward direction, a mounting for pivotally attaching and supporting the shank of the ground working tool to a transverse member of the frame, the mounting including a fixed member adapted to be fixed to the transverse member of the frame and having a longitudinally extending underface terminating forwardly of the transverse member to which said mounting is adapted to be fixed, the fixed member having ears extending rearwardly from said underface at the sides thereof, a shank attaching member having an elongated plate portion provided with an upper face corresponding with and normally in contact with said underface of the fixed member and provided with a longitudinally extending underface in engagement with a corresponding upper face of the shank whereby the plate portion of the shank attaching member is between the shank and the fixed member, said shank attaching member having a lug extending upwardly between said ears of the fixed member and disposed at the rear end of the plate portion and above the plane of the underface of the fixed member, said shank attaching member having depending means embracing the shank at the rear end of said plate portion, a bolt connecting the forward end of the plate portion with the forward end of the shank and cooperating with the shank embracing means in maintaining the upper face of the shank in constant continuous contact with the underface of said plate portion, a pivot pin extending transversely through said lug and carried by the ears with the axis thereof above the plane of the underface of the fixed member whereby the normally contacting face of the shank attaching member immediately moves out of contact with and away from the face of the fixed member when the shank attaching member pivots upon rocking movement of the shank, a coil spring having one end seated on the forward end of the fixed member, and means having connection with the forward end of the shank and with the other end of the coil spring whereby the spring yieldably maintains said normal contact of the upper face of the plate portion of the shank attaching member with the underface of the fixed member."

There are actually two devices of defendants involved in this action. One is the "Deere 650" model, which plaintiffs contend infringes upon Claim One of the 798 Patent, and the other is the "Deere 100" model, which plaintiffs claim infringes upon both Claims One and Two of the 798 Patent.

The above-entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

## FINDINGS OF FACT

### I.

The plaintiff, William T. Graham, resides at Amarillo, Texas, and is a citizen of the United States. The plaintiff, Graham Plow, Inc., is a corporation organized under the laws of the state of Texas, with a principal place of business at Amarillo, Texas. The defendant, John Deere Company of Kansas City, is a corporation organized under the laws of the state of Missouri, with a place of business at Kansas City, Missouri. The defendant, Deere & Company, is a corporation organized under the laws of the state of Delaware, with a principal place of business in Moline, Illinois.

## II.

On February 10, 1953, Letters Patent No. 2,627,798 was issued to William T. Graham on an application filed August 27, 1951, for an invention on "Clamp for Vibrating Shank Plows." William T. Graham is the owner of said patent, and Graham Plow, Inc., is a licensee under said Letters Patent.

## III.

This is a suit under the Patent Laws of the United States for infringement of U. S. Letters Patent No. 2,627,798, and this Court has jurisdiction of the parties and the subject matter of this suit.

## IV.

In the description and drawings of the Graham patent in suit, there is disclosed what is called a "spring clamp" to connect the upper forward end of a resilient shank to a beam with the lower end of said shank carrying a ground-working tool such as a chisel and the like for plowing or other ground-working operations. The clamp includes a body portion removably attached to the beam with a rearward portion having a pivot pin on which is pivotally mounted a movable part with a plate portion extending forwardly or longitudinally of the normal direction of travel of the plow. The upper forward portion of the shank extends through a stirrup or loop element at the rear of the movable part and longitudinally beneath the plate portion of the movable part and is connected to the plate at the forward end thereof at a substantial distance from the pivot pin, whereby the shank and movable part pivot together about the axis of the pivot pin. A coil spring is arranged at the forward end of the body and, through a nut, washer and spring rod, acts on the shank and plate member to resiliently urge the forward end of the shank and plate upwardly toward the body of the clamp to a stop engagement therewith to normally hold the shank in normal position. In plowing operations, forces are exerted rearwardly and upwardly on the ground-working tool, and when suffi-cient to overcome the forces applied by the spring the shank and movable part will pivot on the pivot pin with the forward end of the shank and plate moving downwardly against the tension of the spring. Forces in plowing hold the shank against the rear of the plate of the movable part and when said forces are removed or lessened, or the ground-working tool removed from the ground, the shank at the rear of the movable part is supported by a stirrup or loop that embraces the shank adjacent the pivot of the movable part. In plowing operations, if the ground-working tool strikes a rock or other obstruction, substantial shock and forces are applied to the shank, pivoting the shank and movable member about the pivot pin, tending to compress the spring and permitting upward movement of the ground-working tool whereby it can pass over the rock or obstruction and, as it passes over such obstruction, the stirrup or loop on the movable part supports the shank against excessive rebound. While the stirrup supports the shank at the rear of the movable part, it does so in a manner that permits movement of the shank, thereby retaining the flexibility of the structure and reducing shock.

## V.

Prior to the invention in the Graham patent in suit, Graham Plow, Inc.'s predecessor manufactured and sold chisel plows wherein the upper forward portion of the shank was rigidly fixed to the plow beam by a rigid clamp. Said plaintiff corporation's predecessors started selling such chisel plows in the rocky country, but the chisels in striking rocks caused such shocks to be imparted to the equipment that the parts of the plows were bent and broken so that the structures were not satisfactory. In endeavoring to overcome the problems of plowing in the rocky country, Graham devised a spring clamp structure, and on January 10, 1950, was issued Patent No. 2,493,811 entitled "Vibrating Plow and Mounting Therefor," which was prior to the Graham patent in suit. Plaintiff, Graham Plow, Inc., has continued to manufacture and sell plows with spring clamps which embody the

principle of the structure of the 811 patent, but neither William T. Graham, the Graham companies, nor any licensee under them has ever manufactured or sold a clamp embodying the 798 structure.

## VI.

Prior to defendants putting their John Deere 650 series spring clamp on the market, their only product having a support with any spring action for chisels in plowing was a type having a coil in the shank used on both their 600 and 900 series tools, such shanks having coils of approximately two turns intermediate the ends and rearwardly of the frame. Early in 1953, defendants sent a representative in the field to make a survey to determine if the 600 tool carrier was the right design to compete with Graham and Jeoffroy, the survey reports being defendants' Exhibits 30 dated March 30, 1953, and 31 dated April 17, 1953. Defendants' engineer, Mr. Hunter, who designed the John Deere 650 spring clamp, had previously made trips into the field and had seen Graham's spring clamp plows of the 811 type and Jeoffroy's spring clamp plows. It was defendants' practice to obtain copies of patents on farm implements and maintain a library of such copies for the engineers in the factory and also in the defendants' Patent Department, so that when Mr. Hunter was given the assignment of designing a new tillage tool clamp in the spring of 1953, the Graham patent in suit and both of the survey reports (def. Ex. 30 and 31) were available to him. Mr. Hunter designed a clamp and two drawings thereof (defs. Exs. 33–A and 33–B) were sent to the Patent Department of Deere & Company, and said Patent Department, by letter of October 23, 1953 (def. Ex. 32) advised that the proposed spring clamp design infringed claim 1 of the Graham 798 Patent. In that structure, an upper face of the plate of the movable member engaged a lower face of the body or member fixed to the beam, but in a revised design shown in drawings (defs. Exs. 38 and 39), the forward end of the plate was cut off to expose the extreme forward end of the shank and a lug on the body was extended down to engage the upper face of the shank when said shank was in normal position. The revised design with minor changes became the defendants' commercial device, the John Deere 650 spring clamp (plt. Ex. I), but that structure had the same plowing action as the structure shown in the design (def. Ex. 33–B).

## VII.

In 1958, Mr. Hunter was given the project of developing a lighter machine, which project ended in the placing of the John Deere 100 series spring clamp on the market. Mr. Hunter made a preliminary design, drawings of which (def. Exs. 45–A and 45–B) were sent to the Deere Patent Department, which, by letter dated May 7, 1958, (Def. Ex. 32) advised that such design would be an infringement of claim 1 of the Graham 798 patent. The preliminary design had a forward end of the pivoted member engaging a forward portion of the body of the fixed member to form a stop when the springs held the pivoted member and shank in normal position. The preliminary design was revised by removal of material on the forward end of the pivoted member and adding some material to the plate portion under the beam which was exposed between body parts secured on the beam so that the plate portion would contact the beam to form the stop when the pivoted member and shank were in normal position, but this change did not change the function or positioning of the shank.

## VIII.

The following patents were made of record during the prosecution of the application for the Graham Patent in suit:

| | |
|---|---|
| 417,775 | Drader et al. |
| 2,014,451 | Pfeifer |
| 2,493,811 | Graham |
| 57,391 | Petersen (Danish) |
| 111,910 | Traeger (Australian) |

These patents are relied upon by defendants as part of the prior art in this case.

## IX.

Defendants have also cited by way of defense, in addition to the file wrapper patents, the following patents:

| | |
|---|---|
| 211,003 | Dunbar |
| 231,268 | Carter |
| 284,278 | Cobb |
| 287,965 | Rix |
| 503,288 | Moore |
| 1,141,804 | Lamprell et al. |
| 1,805,599 | Roberts |
| 1,982,862 | Erdman |
| 2,029,249 | Noell et al. |
| 1056/26 | Prior (Australian) |

## X.

Defendants have also cited by way of defense the following prior devices:

Jeoffroy SC–580 spring clamp (def. Ex. 2) manufactured and marketed by Jeoffroy Mfg. Inc., Amarillo, Texas;

Glencoe spring clamp (def. Ex. 3) manufactured and sold by the Glencoe Manufacturing Co., Glencoe, Minnesota.

## XI.

Defendants place principal reliance upon the prior art patents to Cobb 284,278 and Rix 287,965 and the prior device of Glencoe, and contend that the usual presumption of validity does not apply because the Patent Office failed to consider these patents and device, as well as the other additionally cited prior art. All of the prior art cited by defendants was before the Court in the Fifth Circuit in Graham v. Cockshutt, wherein the decision, 256 F.2d 358, held the Graham patent valid, but not infringed. The disclosures of the prior art not cited by the Patent Office, and particularly the Cobb and Rix patents and the Glencoe device, are similar to some of the patents relied upon by the Patent Office Examiner, as for example, the Danish patent of Petersen. Hence, the statutory presumption of validity of the Graham patent in suit is not weakened or destroyed.

## XII.

The prior art as a whole in one form or another contains all of the mechanical elements of the Graham 798 structure, and in a broad sense all of the elements are found in one single reference, the Glencoe clamp. However, the particular arrangement of the elements disclosed by 798 is not present in any single reference or as a whole.

## XIII.

An improved functional result is obtained by the Graham 798 structure and the main improvement is due to the particular arrangement of the shank in relation to the pivoted member and spring member which reflects in downward flexing of the shank at the forward portion thereof alongside the plate portion of the pivoted member and does lessen wear and tear to some parts of the clamp.

## XIV.

The Glencoe structure uses a rotating pivot which prevents rubbing contact of the shank with the fixed member of the clamp and means for attaching the shank to the pivoted member which permits flexibility of the shank posteriorly to the rear of the pivoted member equal in magnitude to that which would be expected in the Graham 798 patent structure. However, the flexing of the shank is different in direction and location relative to the pivoted member than that which occurs in the Graham 798 structure. The Graham 798 patent is an improvement patent, and, while the individual mechanical elements may be found in the prior art, taken as a whole the Graham 798 structure is sufficiently different in the operative relationship of the shank and pivoted member with a slight but significant difference in the flexing of the forward portion of the shank that is not found in the prior art, so that the Graham 798 patent involves invention.

## XV.

The differences between the Graham 798 patent and the prior art are such that the Graham 798 structure, as covered by claims 1 and 2 thereof, would not have been obvious at the time Graham made his invention to a person having ordinary skill in the art of agricultural implements and other related arts. It would

not have been obvious to a man having ordinary skill in the art to have taken certain components of the prior art and to have combined them in the manner disclosed and claimed in the Graham patent. Even with the full benefit of hindsight, it cannot be said that the Graham structure represents no more than skilled craftsmanship.

## XVI.

■ All of the evidence taken together establishes that defendants, with knowledge of the Graham 798 patent, made designs that infringed the Graham patent and then made minor changes which were differences in degree and not in fact in their commercial structures to provide substantially the same structure and operating substantially in the same manner and providing substantially the same results to actually employ the essence of the Graham invention.

## XVII.

It demanded invention of the quality required by the Patent Statutes, Title 35 U.S.C., to produce the structure of the Graham 798 patent. Defendants have failed to sustain the burden imposed by § 282, Title 35 U.S.C.

## XVIII.

No evidence was introduced to show that defendants' structures were derived from the prior art, from independent experiment, or from any source other than the patented structure itself. In view of this, it is a fair inference that the accused structures had their origin in the Graham 798 patented structure.

## XIX.

Defendants have contended that the accused John Deere 650 spring clamp avoids claim 1 of the Graham 798 patent because said accused structure does not have a longitudinally extending underface of the fixed member engaged by the upper face of the plate of the pivoted member. The Court finds, however, that the fixed member does have an underface, that due to shortening of the plate of the pivoted member, is engaged by an upper face of the shank to provide the same result.

## XX.

Defendants have contended that the accused John Deere 100 spring clamp avoids claims 1 and 2 of the Graham 798 patent because an upper face of the plate of the pivoted member engages an underface of the beam instead of the fixed member. The Court finds, however, that in actual use, the engaging faces are equivalent and provide the same result.

## XXI.

Defendants assert the "doctrine of File Wrapper Estoppel," i. e., that in the prosecution of his patent within the Patent Office, Graham canceled certain rejected claims, accepted narrower claims in their stead, and is now estopped from obtaining a breadth of construction as broad as that contained in the claims voluntarily canceled. Defendants urge that in this case the patent claims require the stop contact faces of the devices must be the upper face of the plate of the movable member and a lower face of the fixed member and that such faces must have substantial longitudinal length. While claims 1 and 2 of the patent specify the faces as longitudinally extending, they do not specify any extent of longitudinal length, and the location of the faces forwardly of the pivot pin is different from the location of the beak adjacent the pivot pin in the Danish patent of Petersen. The original claims 1 to 12 inclusive in the Graham application as filed were broad in regard to the relative position of the shank and plate of the movable member, and the patent claims are narrower in that the shank is specified as being below the plate of the movable member. The relative location of the parts of the Graham 798 device as specified in the patented claims, when the operative conditions and forces are considered, is not shown in any of the prior art relied on by defendants. Therefore, the Court finds that there is no file wrapper estoppel to a construction of the claims that would preclude a find-

ing of infringement by the accused Deere structures.

## XXII.

The defendants' John Deere 650 spring clamp has all of the elements or the equivalents thereof of claim 1 of the patented structure and performs the same function in the same way as the corresponding element of the patented structure. Defendants' said spring clamp responds to the equivalents of the elements of claim 1 of the Graham patent, and this claim has been infringed by defendants' manufacture and sale of the accused John Deere 650 clamp.

## XXIII.

The defendants' John Deere 100 spring clamp has all of the elements or the equivalents thereof of claims 1 and 2 of the patented structure and performs the same function in the same way as the corresponding element of the patented structure. Defendants' said spring clamp responds to the equivalents of the elements of claims 1 and 2 of the Graham patent, and these claims have been infringed by defendants' manufacture and sale of the accused John Deere 100 spring clamp.

## XXIV.

All changes or variations in design made by the defendants in its structures 650 and 100 apparently serve no purpose or introduce any different operating principle other than effecting a consciously patterned variation in an attempt to avoid infringement of the plaintiffs' 798 device. This does not necessarily mean that the defendants' actions were in bad faith, as they have a right to construct spring clamp plows so long as their devices do not infringe upon others' patents. But it appears that defendants have definitely used the basic structure and principle of the plaintiffs' patent 798 within the reasonable scope of the coverage of plaintiffs' patent.

## XXV.

Defendants' contention on "longitudinally extending underface" as being an essential and restrictive description of plaintiffs' 798 Patent, is too literal and narrow. Each design of the defendants which literally avoids this description performs exactly the same function and purpose with identical results.

## CONCLUSIONS OF LAW

### 1.

The Court has jurisdiction over the subject matter of this action and the said parties.

### 2.

Claims 1 and 2 of the Graham patent No. 2,627,798 are valid.

### 3.

Claim 1 of the Graham patent No. 2,627,798 has been infringed by defendants' John Deere 650 spring clamp as exemplified by plaintiffs' Exhibit I.

### 4.

Claims 1 and 2 of the Graham patent No. 2,627,798 have been infringed by defendants' John Deere 100 spring clamp as exemplified by plaintiffs' Exhibit J.

### 5.

Defendants are jointly and severally liable for damages resulting from infringement of the Graham patent No. 2,627,798 and also for the costs in this action.

### 6.

Plaintiffs are entitled to a permanent injunction against the defendants in respect to claims 1 and 2 of said Graham patent No. 2,627,798 and to an accounting for compensatory damages, as well as any further recovery authorized by law and awarded in the discretion of the Court.