AUTOMATED BUILDING COMPONENTS, INC., Appellant,

v.

HYDRO–AIR ENGINEERING, INC., Appellee.

HYDRO–AIR ENGINEERING, INC., Appellant,

v.

AUTOMATED BUILDING COMPONENTS, INC., Appellee.

Nos. 17985, 18103, 18104, 18004, 18105.

United States Court of Appeals
Eighth Circuit.

July 7, 1966.

Robert E. LeBlanc, of LeBlanc & Shur, Washington, D. C., for Automated Building Components, Inc., Henry Shur, of LeBlanc & Shur, Washington, D. C., and Estill E. Ezell, of Kingsland, Rogers, Ezell, Eilers & Robbins, St. Louis, Mo., were with him on the brief.

Stuart N. Senninger and Donald G. Leavitt, of Koenig, Senninger, Powers & Leavitt, St. Louis Mo., for Hydro-Air Engineering, Inc., and filed brief.

Before VOGEL, Chief Judge, BLACK-MUN, Circuit Judge, and STEPHEN-SON, District Judge.

VOGEL, Chief Judge.

Automated Building Components, Inc. (hereafter Automated), the assignee of the entire interest in United States Letters Patent No. 2,877,520 (hereafter the Jureit Patent), has appealed from the District Court's determination that Claims 1, 3 and 4 of the Jureit Patent are invalid because of being obvious to a person having ordinary skill in the art to which the claims pertain and also because of having been anticipated by the prior art. This determination effectively curtails a patent infringement action brought on the Jureit Patent by Automated against Hydro-Air Engineering, Inc. (hereafter Hydro-Air). Hydro-Air itself appeals from a dismissal of its counterclaim against Automated for treble damages under the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 15.[1] Hydro-Air's counterclaim is based on allegations of patent misuse and antitrust law violations by Automated through the use of illegal tying agreements entered into between Automated and its customers. Without deciding if there were such antitrust violations, Judge Regan determined that Hydro-Air proved no damages so as to be entitled to recover under the Clayton Act. Certain procedural questions are also involved on these appeals.

The District Court's opinion, published at 237 F.Supp. 247, sets out the facts of these cases in sufficient detail so as to make any further statement un-

---

1. As provided in the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 15:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

necessary. With a few additional comments, we affirm the District Court on the basis of Judge Regan's opinion. See, also, Automated Bldg. Components, Inc. v. Structomatic, Inc., Civil No. 61 C 262, N.D.Ill., March 25, 1965, an unreported case which also holds Claims 1, 3 and 4 of the Jureit Patent invalid in law.

 § 103 of the Patent Act of 1952 provides as follows, at 66 Stat. 798, 35 U.S.C.A. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The Supreme Court recently rendered its first patent decisions since the enactment of the Patent Act of 1952 in the cases of United States v. Adams, 1966, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, and Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. Mr. Justice Clark interpreted § 103 in the Graham case, at 383 U.S. 14, 86 S.Ct. 692, 15 L.Ed.2d 554, as follows:

"The section is cast in relatively unambiguous terms. Patentability is to depend, in addition to novelty and utility, upon the 'non-obvious' nature of the 'subject matter sought to be patented' to a person having ordinary skill in the pertinent art."

At page 252 of 237 F.Supp. Judge Regan stated, in regard to the Jureit Patent:

" * * * It was not only obvious to one skilled in the art in 1956 and within the ordinary skill of a worker in the nailing art to modify nail-like fasteners to vary withdrawal resistance but was actually demonstrated in prior art patents, i. e., Kalischer and Berthaud. Without going into what is obvious to this Court but by way of illustration it certainly does not take inventive genius to make joints with plates differing from the French connector plates only in that the Jureit plates have nails struck out from the plate instead of being welded to the plate as shown by Berthaud.

"This Court finds that substantial evidence has been introduced attacking the validity of the Jureit claims and that defendant has overcome the presumption of validity by showing that the subject matter of Jureit's Claims 1, 3, and 4 as a whole was obvious, at the time the alleged invention occurred, to a person having ordinary skill in the art to which the Claims pertain."

From a careful reading of the entire record we agree with Judge Regan's conclusion. His opinion, not being clearly erroneous, is conclusive on appeal. Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 1956, 237 F.2d 601, 602; Trico Products Corp. v. Delman Corp., 8 Cir., 1950, 180 F.2d 529, 530. Though drafted before Graham and Adams, the opinion clearly follows the dictates of § 103, as interpreted by the Supreme Court, in discussing a proper standard of invention.

 Automated's allegations questioning the qualification of Hydro-Air's expert witness, Donald A. Fischer, the Dean of the School of Engineering at Washington University, to testify as to the art here involved, clearly must relate to credibility rather than to the admissibility of Fischer's testimony, since the trial court has determined that Fischer qualified as an expert witness. See, generally, 2 Wigmore, Evidence, § 561 (3d Ed. 1940), as supplemented, and the authorities cited therein.

 Automated challenges the right of Hydro-Air to appeal on the denial of its counterclaim since Hydro-Air did not present a timely appeal thereon after the entry of judgment by the District Court on December 14, 1964. Hydro-Air's appeal was perfected only after Judge Regan vacated the initial judgment and purported to reenter it on June 4, 1965, under Rule 60(b) of the Fed.Rules of Civ. Proc., 28 U.S.C.A., on the grounds that

counsel for Automated violated an oral agreement entered into with counsel for Hydro-Air. Such agreement allegedly provided that Automated would not appeal on its infringement claim if Hydro-Air would not appeal on its counterclaim. Automated filed an appeal at the last possible moment, thus leaving Hydro-Air no time to perfect its own appeal.[2] While we have serious doubts concerning the jurisdiction of the District Court to grant the re-entry of judgment once an appeal had been taken by Automated,[3] we do not deem it necessary to rule on this point since on the basis of the record, as ably interpreted in Judge Regan's opinion, Hydro-Air's counterclaim must fail in any event. A viewing of the record as a whole can yield no logical or reasonable inference that Hydro-Air's damage, if any, was caused by patent misuse or antitrust violations, if any, on the part of Automated.

These cases are in all things affirmed.

---

2. The amended Rule 73(a) (3) of the Fed. Rules of Civ.Proc., effective July 1, 1966, prevents this situation from arising as it gives "any other party" 14 additional days to file an appeal after the first notice of appeal is filed.

3. See, e. g., Janousek v. Doyle, 8 Cir., 1963, 313 F.2d 916, 920. But cf. Oliver v. City of Shattuck ex rel. Versluis, 10 Cir., 1946, 157 F.2d 150.