**FLOUR CITY ARCHITECTURAL METALS, Appellee,**

v.

**ALPANA ALUMINUM PRODUCTS, INC., Appellant.**

**ALPANA ALUMINUM PRODUCTS, INC., Appellant,**

v.

**FLOUR CITY ARCHITECTURAL METALS, Appellee.**

Nos. 71–1161, 71–1162.

United States Court of Appeals, Eighth Circuit.

Jan. 13, 1972.

Jack W. Wicks, Wicks & Nemer, Minneapolis, Minn., for appellant.

Mark T. Basseches, Curtis, Morris & Safford, by Robert D. Spille, New York City, Merchant & Gould, by Phillip H. Smith, Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

This controversy concerns the validity of the United States Patent No. 3,289,-377 (the Alpana patent). This patent relates to a thermally insulated frame designed for use in metal windows or doors. In consolidated suits between the patent holder, Alpana Aluminum Products, Inc. (Alpana), and the alleged infringer, Flour City Architectural Metals, the district court, in an unreported opinion, held the patent invalid and, therefore, not infringed. Alpana appeals from the adverse judgment of patent invalidity (Appeal No. 71–1161) and from the separate judgment dismissing the infringement suit (Appeal No. 71–1162). After review of an extensive record, we affirm the district court.

## I.

### THE PATENT IN ISSUE

We turn to a consideration of the Alpana patent. Frank W. Hetman, who assigned the patent to Alpana, submitted his patent application on November 7, 1962. The invention, designated as an "Insulated Frame and Connector Therefor," represented a claimed improvement in the construction of a "thermal break" frame for metal windows and doors.

Since a solid metal frame utilized in an exterior wall of a heated building permits substantial heat loss from the interior of the building as well as moisture condensation upon the interior frame, the insertion of an insulating material or "thermal break" between the inside and the outside of the frame became necessary. The prior art of such "thermal break" frames discloses several different configurations of metal parts and insulation designed to minimize heat conductivity. In the Alpana invention the outer and inner frame members connect by way of overlapping flanges and lips extending from each such member. Extruded vinyl insulation fills the space between the overlapping flanges and lips of the inner and outer frame members, thus creating a tight interlocking fit between them, and providing an effective thermal barrier.

The following photographs labeled "A" and "B" show a cross-section of the Alpana "thermal break" frame. Photograph "B" shows an enlarged front view of the same cross-section encircled in photograph "A".

"A"

Inner Frame Member

Sash

Outer Frame Member

Interlocking Flanges

[A4808]

"B"

Inner Frame Member

Insulating Material

Sash

Outer Frame Member

[A4809]

The above photographs illustrate the manner of interconnection between the outer and inner frame members, with the space between the overlapping flanges occupied by a vinyl plastic substance which has been extruded into place to provide both insulation and a tight fit.

Appellant describes the key feature of the patent in question as follows:

[T]he Alpana patent . . . discloses an unique rigid window frame construction including an inner frame, and outer frame, the frames being interlocked with an overlapping arrangement of dual flanges, each flange having a lip with each lip of each of the flanges engaging within a recess in each of an elongated plastic barrier separator member, each barrier with a lip therein and within one of a pair of short flanges and a common bottom wall *with movement in any transverse direction prevented with the parts in compression and not in shear thereby providing a rigid interlock connection,* which allows expansion and contraction due to temperature changes but still maintaining the high structural integrity . . . . [App.Br. at 9] [emphasis in original]

Alpana concedes that its invention is not a pioneer in the field of "thermal break" frames, but contends that the structural strength provided by its configuration of interlocking frame members distinguishes the invention from the teaching of the prior art, noting particularly that the interlocked frame members are overlapped in such a way that they would not separate in the event that the vinyl insulator were to be destroyed by fire or otherwise.

Although the Alpana patent contains two claims, Alpana relied solely upon the second claim in this litigation.[1] The district court rejected the validity of this claim on two separate grounds: first, for obviousness of the subject matter of Claim 2, tested by the requirements of 35 U.S.C. § 103;[2] and second for want of the specificity required by 35 U.S.C. § 112 in describing the subject matter of the claim[3] because of the patent applicant's failure to particularly point out

---

1. Claim 2 of the Alpana patent reads as follows:

2. In a framing construction for windows an inner pane-carrying frame member, an outer pane-carrying frame member, said inner frame member having a bottom wall, an inner side wall connected to said bottom wall, an outer side wall connected to said bottom wall, an inner short flange extending inwardly from said inner side wall, an inner sash connected to said inner side wall, an outer short flange extending inwardly from said outer side wall, said outer pane-carrying frame member having an outer sash portion, a first flange extending from said outer sash portion, a second flange extending from said outer sash portion spaced from said first flange, each of said first and second flange portions having a lip portion extending therefrom, first and second thermal barrier-connector members, each including an elongated body-member having a recess formed longitudinally therein, said first thermal barrier-connector member positioned within said inner short flange and said bottom wall of said inner frame, with said lip of said first flange of said outer sash extending into said recess of said first thermal barrier-connector, said second thermal barrier-connector member positioned within said outer short flange and said bottom wall of said inner frame with said lip portion of said second flange of said outer sash extending into said recess of said second thermal barrier-connector member, to thereby rigidly connect said inner frame member with said outer frame member with a minimum of heat conduction therebetween.

2. 35 U.S.C. § 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. Title 35 U.S.C. § 112 provides in part:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise,

and distinctly claim the overlap feature as a key feature of the invention.

Because our affirmance of the district court rests upon the first of these two grounds, we find it unnecessary to consider the specificity issue.

## II.

### OBVIOUSNESS—SCOPE OF REVIEW

Alpana contends that the trial court's finding of obviousness was clearly erroneous and should, therefore, be reversed. Appellee, on the other hand, argues that we should sustain this finding under Rule 52(a) of the Federal Rules of Civil Procedure.[4]

Notwithstanding that both parties view our function as one of limited review under Rule 52(a), we find no such unanimity of opinion among the patent decisions announced in this circuit. We deem it appropriate, therefore, to examine in depth the proper scope for reviewing the obviousness issue in patent cases, as a predicate to disposition of this appeal. We focus particularly upon those cases arising subsequent to Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), in which the Supreme Court first considered the statutory standard of obviousness as set forth in § 103 of the Patent Act of 1952, 35 U.S.C. § 103.

In Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 (8th Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966), a panel of this court reversed the district court's determination of nonobviousness. While indicating that the nonobviousness question requires compliance with a statutory standard and thus presents an issue of law, the court actually resolved the question as one of fact, stating:

> We are not troubled by this issue [as one of fact or one of law] because obviousness is apparent from plaintiff's own admissions coupled with the undisputed evidence of utilization of single head plates in many and varied extrusion machines found in the prior art. [*Id.* at 30]

Almost contemporaneously, another panel of this court expressed doubt that "invention" (or nonobviousness) should always be treated as a question of fact. American Infra-Red Radiant Co. v. Lambert Industries Inc., 360 F.2d 977, 988, n. 4 (8th Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966). During the same year, but without discussing the fact-law dichotomy, the court in Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895 (8th Cir. 1966), treated the issue of obviousness as one of law subject to independent evaluation on appeal.[5]

---

and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

4. Rule 52(a) as pertinent, reads in part:
   . . . Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses . . .

5. *Accord,* Agrashell, Inc. v. Hammon Products Co., 413 F.2d 89 (8th Cir. 1969); University of Illinois Foundation v. Winegard Co., 402 F.2d 125 (8th Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1191, 22 L.Ed.2d 452 (1969); National Connector Corp. v. Malco Manufacturing Co., 392 F.2d 766 (8th Cir.), cert. denied, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968); Gerner v. Moog Industries, Inc., 383 F.2d 56 (8th Cir. 1967), cert. denied, 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 981 (1968); Superior Concrete Accessories, Inc. v. Richmond Screw Anchor Co., 369 F.2d 353 (8th Cir. 1966).

Other cases also demonstrate the unsettled nature of this question within the Eighth Circuit. In Piel Manufacturing Co. v. George A. Rolfes Co., 363 F.2d 57 (8th Cir. 1966), the panel acknowledged that "considerable weight" was to be afforded the district court's determination of obviousness vel non, but added that "the ultimate issue of 'obviousness' must be considered a matter of law." Id. at 61.[6] In Automated Building Components, Inc. v. Hydro-Air Engineering, Inc., 362 F.2d 989 (8th Cir. 1966), on the other hand, the court relied upon the clearly erroneous rule in affirming the district court determination of patent invalidity, saying, "[the district court] opinion [with respect to obviousness], not being clearly erroneous, is conclusive on appeal." Id. at 991. But in L & A Products, Inc. v. Britt Tech Corp., 365 F.2d 83 (8th Cir. 1966), our court, in reversing a district court determination of patent validity, fully explored the obviousness issue without the constraint of Rule 52(a). Cf. General Mills, Inc. v. Pillsbury Co., 378 F.2d 666 (8th Cir. 1967); Imperial Stone Cutters, Inc. v. Schwartz, 370 F.2d 425 (8th Cir. 1966).[7] More recently, in Ralston Purina Co. v. General Foods Corp., 442 F.2d 389 (8th Cir. 1971), a panel of this court observed that "[t]he decision of obviousness . . . is one of law which we shall rule on ourselves." Id. at 391. But, in Gallo v. Norris Dispensers, Inc., 445 F.2d 649 (8th Cir. 1971), another panel, relying on Rule 52(a), noted as to the obviousness question:

The District Court made a fact determination based in part on this [expert] testimony and this court will not substitute its judgment for that of the District Court on disputed fact issues unless such determination was clearly erroneous. Id. at 651.

We need to resolve these somewhat conflicting post-Graham cases, and we begin our analysis with that landmark decision. There, the Court stated:

The emphasis on non-obviousness is one of inquiry, not quality, and, as such, comports with the constitutional strictures.

While the ultimate question of patent validity is one of law [Great] A. & P. Tea Co. v. Supermarket [Equipment] Corp., supra, [340 U.S. [147] at 155, [71 S.Ct. [127] at 131, 95 L. Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of "Nonobviousness": A Nontechnical Approach to Patent Validity, 112 U. Pa.L.Rev. 1169 (1964).

This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observ-

6. Accord, Greening Nursery Co. v. J and R Tool and Manufacturing Co., 376 F.2d 738 (8th Cir. 1967).

7. See Comment, Obviousness in the Eighth Circuit, 14 St. Louis U.L.J. 672 (1970),

for an extensive review and analysis of post-Graham patent cases in the Eighth Circuit.

ance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act. [383 U.S. at 17–18, 86 S.Ct. at 693]

This language of the Supreme Court serves as a rather precise guideline for the trial court, but does not articulate with particularity a standard for our appellate review. Although stating that "the ultimate question of patentability is one of law," *Graham* does not clarify whether the underlying "condition" of nonobviousness also calls for treatment as a question of law. The Court, moreover, did not expressly overrule its earlier precedents which indicate that obviousness is to be treated as a matter of fact, governed on appeal by the "clearly erroneous" rule. *See, e. g.,* Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949); United States v. Esnault-Pelterie, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123 (1936); Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098 (1924). In *Graver,* the Court considered its review function strictly proscribed by the fact-finding of the two lower courts, emphasizing that:

A court of law, such as this Court is, rather than a court for correction of errors in fact finding, cannot undertake to review concurrent findings of fact by two courts below in the absence of a very obvious and exceptional showing of error. [336 U.S. at 275, 69 S.Ct. at 538]

It should be noted, however, that Justices Douglas and Black, concurring in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 95 L.Ed. 162 (1950), construed the majority opinion as having rejected these earlier precedents calling for "invention," i. e., non-obviousness, to be reviewed as an issue of *fact:*

The Court fashioned in Graver Mfg. Co. v. Linde Co., 336 U.S. 271, 275, [69 S.Ct. 535, 93 L.Ed. 672], a rule

for patent cases to the effect that this Court will not disturb a finding of invention made by two lower courts, in absence of a very obvious and exceptional showing of error. That rule, imported from other fields, never had a place in patent law. Having served its purpose in Graver Mfg. Co. v. Linde Co., it is now in substance rejected. The Court now recognizes what has long been apparent in our cases: that it is the "standard of invention" that controls. That is present in every case where the validity of a patent is in issue. It is that question which the Court must decide. No "finding of fact" can be a substitute for it in any case. The question of invention goes back to the constitutional standard in every case. [340 U.S. at 155–156, 71 S.Ct. at 132]

It is plain to us that the Supreme Court now has rejected the clearly erroneous standard for reviewing determinations of obviousness vel non. The case of Calmar, Inc. v. Cook Chemical Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), decided with and as a part of the *Graham* case, as well as the companion opinion in United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), illustrate that the Court made an independent review of the record, unrestrained by Rule 52(a), in resolving the obviousness issue. In *Calmar,* the Court, sub silentio, rejected the "two court rule" of *Graver,* by reversing a decision of this court which had sustained a district court finding that the patent in question was nonobvious. *See* Calmar, Inc. v. Cook Chemical Co., 336 F.2d 110 (8th Cir. 1964), affirming 220 F.Supp. 414 (W.D.Mo.1963).

The Court conducted a similar review of the record in considering the *Graham* case. There, the trial court, utilizing substantially the same § 103 test as the Supreme Court, found the patent in question nonobvious as a matter of fact. Graham v. John Deere Co. of Kansas City, 216 F.Supp. 272, 278–279 (W.D. Mo.1963). This court, applying a stricter test for obviousness drawn from

Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941), reversed, holding that the patent reflected only an obvious change over the prior art. John Deere Co. of Kansas City v. Graham, 333 F.2d 529, 534 (8th Cir. 1964). On review, the Supreme Court rejected this obviousness test as applied by the Eighth Circuit, but, after independently reviewing the record, affirmed our judgment rather than deferring to the district court's "finding of fact" on the issue. More recently, in Anderson's Black Rock v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), the Court followed a similar pattern of review.

■ Following these examples set by the Supreme Court, we are constrained to review the ultimate question of obviousness vel non as a matter of law, not fact.

■ Of course, as noted in *Graham*, several basic factual inquiries underlie the ultimate determination of whether an invention is obvious or not. *Graham, supra*, 383 U.S. at 17, 86 S.Ct. 684. We deem these "factual inquiries" subject to the constraint of Rule 52(a), upon review. As stated in *Graham*, these underlying inquiries include: (1) The trial court's determination of the scope and content of the prior art; (2) the trial court's ascertainment of the differences between the prior art and the patent claims at issue; (3) The trial court's resolution of the level of ordinary skill in the pertinent art. It is "[a]gainst this [factual] background [that] the obviousness or nonobviousness of the subject matter is determined." *Graham, supra*, 383 U.S. at 17, 86 S.Ct. at 694. That determination is made as a matter of law. We find agreement for this analysis in descisions of the other circuits.[8]

8. *Second Circuit*: Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097 (2d Cir. 1969), cert. denied, 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811 (1970).

*Third Circuit*: Pre-*Graham*, this circuit determined the ultimate question of "invention" or nonobviousness to be one of law. Packwood v. Briggs & Stratton Corp., 195 F.2d 971 (3d Cir.), cert. denied, 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657 (1952).

*Fifth Circuit: E. g.*, National Athletic Supply Corp. v. Tone-O-Matic Products, Inc., 421 F.2d 407 (5th Cir. 1970); Kiva Corp. v. Baker Oil Tools, Inc., 412 F.2d 546 (5th Cir.), cert. denied, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 226 (1969); Swofford v. B & W, Inc., 395 F.2d 362 (5th Cir.), cert. denied, 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 272 (1968).

*Seventh Circuit*: Armour & Co. v. Wilson & Co., 274 F.2d 143 (7th Cir. 1960) (en banc).

*Ninth Circuit*: M.O.S. Corp. v. John I. Haas Co., 375 F.2d 614 (9th Cir. 1967).

*D.C. Circuit*: International Salt Co. v. Commissioner of Patents, 140 U.S.App. D.C. 378, 436 F.2d 126 (1970); Higley v. Brenner, 128 U.S.App.D.C. 290, 387 F.2d 855 (1967). *But see* Commissioner of Patents v. Deutsche Gold-Und-Silber-Scheideanstalt Vormals Roessler, 130 U.S.App.D.C. 95, 397 F.2d 656 (1968).

*Court of Customs & Patent Appeals:* Application of Herrick, 397 F.2d 332, 55 CCPA 1238 (1968).

The *First, Fourth, Sixth* and *Tenth Circuits* do not appear to have settled this question, although the following cases touch upon this issue.

*First Circuit*: Nashua Corp. v. RCA Corp., 431 F.2d 220 (1st Cir. 1970); General Instrument Corp. v. Hughes Aircraft Co., 399 F.2d 373 (1st Cir. 1968); Koppers Co., Inc. v. Foster Grant Co., 396 F.2d 370 (1st Cir. 1968).

*Fourth Circuit*: Porter-Cable Machine Co. v. Black and Decker Manufacturing Co., 402 F.2d 517 (4th Cir. 1968), cert. denied, 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969).

*Sixth Circuit*: Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969); Monroe Auto Equipment Co. v. Heckethorn Manufacturing & Supply Co., 332 F.2d 406 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

*Tenth Circuit*: Continental Can Co. v. Crown Cork & Seal Co., 415 F.2d 601 (10th Cir. 1969), cert. denied, 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970); Eimco Corp. v. Peterson Filters and Engineering Co., 406 F.2d 431 (10th Cir. 1968), cert. denied, 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749 (1969); Griswold v. Oil Capital Valve Co., 375 F.2d 532 (10th Cir. 1966).

## III.

In this light, we turn to the merits, considering first the background for comparing the patent in issue with the prior art. The district court considered nine prior patents relating to "thermal break" frames, and determined each to be relevant in its teaching to the Alpana patent application. The Patent Office had cited only five of these nine prior patents in considering the patentability of the Alpana invention.[9]

After examining exhibits of these prior art references and hearing expert testimony explaining the essential features of each, the trial court made several crucial factual determinations as follows: (1) Each example of the prior art disclosed metal frames in which a thermal barrier was used between two metal frame members to reduce the heat conductivity through the frames, "as in the Alpana patent"; (2) Eight of the prior art references disclosed metal frames in which the inner and outer metal frame members were held together by thermal barrier connectors precluding any metal-to-metal contact, similar to the Alpana device; (3) Four prior art patents, similar to the Alpana invention, employed two separate strips of insulation between the inner and outer frame members; (4) In three of those prior art examples, the inner and outer metal frame members overlapped, with the insulation sandwiched between them in a manner substantially similar to that shown in drawings of the Alpana patent.

The district court also noted that the teaching of the prior art disclosed insulation with preformed recesses extending longitudinally to accommodate the inner and outer frame members, which members thereby served to hold the insulation in place. Finally, the district court observed that the Alpana patent recited a combination of old elements, each of which was to be found in the teaching of the prior art, and each of which performed the same functions as its counterpart in the prior art. From this the district court determined that the differences between the Alpana invention and the teaching of the prior art related principally to form, size, and proportion.

■ Next, following the teachings of *Graham*, the district court turned its attention to the *level* of ordinary skill in the art and determined that these differences in form, size, and proportion were encompassed by the "expected skill of a worker in the metal window art." [App. 28] From these findings the district court concluded that the Alpana patent should be rejected as void for obviousness. We agree.

The development of the prior art has crowded this field with several techniques for accomplishing an insulated metal door or window frame. Alpana, through its patented invention, varied the elements of the existing art by changing the configuration of lips and flanges which fit around the insulating material. This concept of overlapping and interlocking the lips and flanges about the insulating material, as exemplified by the Alpana invention, may well provide, as contended, increased structural rigidity. This fact alone will not warrant patent protection upon the record in this case.

■ In determining whether Alpana's contribution to the art of making "thermal break" frames is nonobvious within the purview of § 103, we are called upon to measure the knowledge of one ordinarily skilled in that art. We do not measure the knowledge of any particular person, or any particular expert who might testify in the case, but, rather, we measure the knowledge of a

---

9. Although we recognize that the term "invention" carries diverse meanings, we use the term in part III to refer to the patented device. *See, generally*, Janicke, *The Varied Meanings of "Invention" in Patent Practice: Different Meanings in Different Situations*, Patent Law Perspectives (Matthew Bender, New York City).

hypothetical person skilled in the art, who has thought about the subject matter of the patented invention in the light of that art. *See* Shaw v. E. B. & A. C. Whiting Co., *supra*, 417 F.2d at 1105. While we may concede that the inventor of the Alpana patent produced a well-constructed "thermal break" frame, the changes over the prior art represented only matters of form or design without change of function. Such changes represent no more than a choice of design which, in the absence of any new or unobvious result, falls within the ken of one having ordinary skill in the art[10] and will not sustain patentability. *See, e. g.,* Calmar, Inc. v. Cook Chemical Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); National Connecter Corp. v. Malco Manufacturing Co., 392 F.2d 766, cert. denied, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968); Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 (8th Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966); Imperial Stone Cutters, Inc. v. Schwartz, 370 F.2d 425 (8th Cir. 1966); *cf.* Woodstream Corp. v. Herter's, Inc., 446 F.2d 1143 (8th Cir. 1971).

■ Finally, appellant relies upon the presumption of validity attaching to the issuance of letters patent under 35 U.S.C. § 282 as requiring reversal, citing our recent decision in *Woodstream, supra.* We reject this contention. The record in this case shows that appellee presented adequate evidence by way of testimony, introduction of other pertinent art not considered by the Patent Office, and demonstrative evidence to overcome the force of the presumption. Such showing is far different from that encountered in *Woodstream* where we noted:

> The heart of the defendants' case consisted of the testimony of one witness, admittedly completely unskilled in the trapping art, who concluded that the Conibear patent was obvious in the light of the prior art. This testimony, standing by itself, will not suffice to overcome the presumptive validity of the United States patent. This testimony stands in sharp contrast to other evidence tending to show nonobviousness. . . . [446 F.2d at 1157]

## SUMMARY

We have accepted the trial court's findings of fact pursuant to Rule 52(a), which findings analyze and compare the invention in question with prior art. The ultimate question of nonobviousness must be resolved as a question of law. We have independently applied the § 103 requirement of "ordinary skill in the art," as that skill level was measured by the trial court, to the differences between the subject matter sought to be patented and the prior art. We hold that the subject matter of the Alpana invention as a whole would have been obvious at the time that this invention was made. Accordingly, the patent must be rejected.

Affirmed.

10. An expert witness for Flour City offered an apt comment on the quality of the differences between the Alpana patent and the prior art, as follows:
> What was added was just constructional details, such as the arrangement of lips and flanges and the arrangement of outer and inner panes, and these, in my opinion, are just structural details that are done by draftsmen. You might even call them drafting details.