**PLASTILITE CORPORATION, a corporation, Plaintiff,**

v.

**AIRLITE PLASTICS CO., a corporation, Defendant.**

**Civ. No. 73-0-149.**

United States District Court,
D. Nebraska.

Feb. 25, 1975.

Louis Strom and H. Robert Henderson, of Omaha, Neb., for plaintiff.

Bruce D. Vosburg, of Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court for decision subsequent to a trial to the Court on the merits which was held on October 7 and 8, 1974. Plaintiff claims patent infringement, trademark infringement, and unfair competition arising out of defendant's unauthorized manufacture and sale of fishing bobbers closely resembling those manufactured by the plaintiff. The defendant, by answer, claimed that plaintiff's patent and trademark were invalid and not infringed, and counterclaimed for treble damages under the antitrust laws.

Pursuant to F.R.Civ.P. 52, the Court makes the following specific findings of fact:

## FINDINGS OF FACT—PATENT INFRINGEMENT

1. Frederick A. Lambach filed a patent application on a fishing bobber on July 24, 1963.

2. On August 4, 1964, patent number 3,142,930 was issued to Frederick Lambach.

3. On October 23, 1965, an application for a reissue patent was filed by Frederick Lambach. Reissue patent number 26,096 was issued. For the purposes of this case, the "reissue" nature of the patent is not important, since the claims (1 & 2) in question here have remained unchanged. [See Appendix A].

4. On July 19, 1963, Frederick Lambach assigned his rights in the patent application to Plastilite Corporation, the plaintiff in this case.

5. The bobbers of patent 3,142,930 were first sold in late 1962 by the plaintiff.

6. For the purposes of this suit, the bobber of patent 3,142,930 teaches two improvements. First, the plunger on the top of the bobber contains an annular groove into which the free end of a wire hook is receivable. Second, the bottom of the bobber has formed therein two parallel spaced apart embossments.

7. The annular ring facilitates assembly of the bobber, and the use of the bobber by a fisherman.

8. The two embossments serve to more securely grip the fishing line when it is attached to the bottom of the bobber.

9. Frederick Lambach invented the 3,142,930 bobber in December, 1960.

10. Frederick Lambach worked for the defendant until August, 1960, when he resigned from the defendant corpora-

tion and commenced working for the plaintiff.

11. Defendant manufactured and sold bobbers having two parallel spaced apart embossments on the bottom in the late 1950's and early 1960's.

12. On July 8, 1964, the plaintiff, through its attorney, Mr. H. Robert Henderson, advised defendant that a plunger having an annular groove but with two walls thereacross would not be an infringement.

13. Thereafter, until approximately 1965 or 1966, the defendant manufactured bobbers having a groove with two walls. Since then, defendant's bobbers have been manufactured with only one wall across the annular groove in the plunger.

14. The patent examiner considered the following references as constituting the prior art:

A. Patent number 2,758,410 issued to C. A. Cowsert on August 14, 1956. His patent taught the use of a sleeve arrangement, in a fishing bobber, where the sleeves coacted to accurately guide the plunger. [See Appendix B].

B. Patent number 2,876,581 issued to L. Schmidt on March 10, 1959. This patent taught the use of a series of holes arranged in an arc, where the free end of the wire hook could be selectively received in any of the holes. The holes were of varying depths to accommodate fishing lines of different diameters. [See Appendix C].

C. Patent number 2,876,582 issued to L. Schmidt on March 10, 1959. This patent taught the use of a wire member which slidably engaged the plunger. The wire member extended from the axial wire typically found in spherical bobbers. Thus, in operation, the hook attachment means (e. g., the end of the axial wire) was urged to rotate with the plunger. The wire hook was thus automatically kept in alignment with the receiving hole. [See Appendix D].

D. Patent number 2,965,999 was issued to G. M. Marsh on December 27, 1960. This patent teaches the use of a plunger that is keyed to the float body so as to be non-rotatable. In addition, the fishing line passed axially through the bobber. The line was secured by an off-center hook, receivable into a single hole in the plunger. [See Appendix E].

15. Plaintiffs Exhibit Number 61 is a spherical bobber bearing the inscription "Buckeye Bait Corp., Miamisburg, O." This bobber has a 270° arcuate groove in the plunger for receiving the free end of the wire hook. Between the ends of the groove is a hole for receiving the free end of the wire hook. The depth of the groove is such that the wire hook will slidably contain the fishing line. However, the depth of the hole is such that the fishing line is gripped by the wire hook.

16. Plaintiff's Exhibit Number 61 [Buckeye Bait Bobber] is of uncertain origin and the Court cannot find that this bobber was in the public domain prior to 1963 when the plaintiff's patent application was filed.

17. Frederick Lambach had a patent search conducted prior to the filing of a patent application. The patents discovered in the search have not been identified as such and introduced into evidence.

18. Upon Lambach's application for a reissue patent, the patent number 3,060,621, issued on October 30, 1962, to L. Schmidt, was included in the prior art.

19. The Schmidt patent teaches the use of a collar on the wire hook, located between the plunger and the fixed end of the spring. Thus, the two wire hooks can be automatically and sucessively disengaged.

20. A patent numbered 2,895,255 was issued on August 18, 1958, to H. B. Irwin. This patent discloses a circumfer-

ential groove having friction producing projections therein, for gripping a fishing line. The two sides of the groove are urged together by a spring.

## FINDINGS OF FACT—TRADEMARK INFRINGEMENT

1. Red and white were the traditional colors used in fishing floats. In October or November of 1966, the plaintiff decided to use the colors orange (top) and yellow (bottom).

2. Bobbers having the new colors were first sold in interstate commerce on or about February 1, 1967.

3. Application for trademark was filed on June 27, 1967, for the color combination yellow and orange for fishing floats.

4. The registration was issued on January 14, 1969, bearing registration number 863,462.

5. By decision dated August 21, 1973, the Trademark Trial and Appeal Board ordered that registration 863,462 "be cancelled in due course." Airlite was not a party to cancellation proceedings. Cancellation number 9,990.

6. Plastilite has appealed the decision of the Trademark Trial and Appeal Board to the United States Court of Customs and Patent Appeals. Notice of appeal was filed on October 19, 1973.

7. On January 9, 1975, the United States Court of Customs and Patent Appeals affirmed the decision of the Trademark Trial and Appeal Board. Patent Appeal No. 74–556, Cancellation No. 9,990.

8. Plaintiff experienced $104,000 increase in sales from 1966 to 1967, at least part of which resulted from the color trademark.

9. Defendant began using colors substantially the same as plaintiff's trademarked colors in the latter part of 1967.

10. Plaintiff expended approximately $174,000 in printing brochures, from 1966 to 1973, which featured the trademarked colors.

11. There is testimony (in the form of depositions) from distributors to the effect that the plaintiff's colors are known to fishermen who buy and use plaintiff's bobbers. In addition, the fishermen are said to associate the trademarked colors with the plaintiff.

## FINDINGS OF FACT—ANTITRUST DEFENSE (MISUSE)

1. Plastilite supplies more than 50% of the domestic market in plastic fishing bobbers.

2. Airlite supplies approximately 50% of the domestic market in plastic fishing bobbers.

3. The selling prices of plaintiff's and defendant's bobbers are virtually identical.

4. Defendant would suffer economically if required to go back to the two wall design, and/or if forbidden from using the colors yellow and orange.

5. Plaintiff and defendant are the only domestic manufacturers of plastic fishing bobbers. However, there are foreign manufacturers who compete in domestic markets.

Most of the facts stated above were proved without substantial contradiction. Finding # 17 is exceptional, since it required a searching examination of the trial testimony, the exhibits, and the depositions received into evidence. Almost every witness was asked about plaintiff's Exhibit No. 61 [Buckeye Bait Bobber]. Karl Louis testified that he first saw the bobber many years ago. Jerome Buening regularly attended trade shows and testified that he couldn't remember seeing the bobber at trade shows. In his deposition, Charles Cowsert stated that he was the sole proprietor of Buckeye Bait; that his company made bobbers identical to plaintiff's Exhibit No. 61 from 1949 to 1952; that in 1959 he moved his company from Miamisburg, Ohio, to Council Grove, but did not change the address on the bobber molds, since the molds were expensive. The Court does not consider this testimony of sufficient persuasiveness to meet defendant's burden of proof. In addition, the Cowsert deposition indi-

**1146**

cates that the bobber was patented and that Cowsert purchased the patent from someone whose name he doesn't remember. If such a patent existed, the defendant had the burden of finding that public record and introducing it into the record. The fact that no such patent was found diminishes the credibility of Cowsert's testimony.

## CONCLUSIONS OF LAW

After careful examination of the prior art (Patents numbered 2,758,410; 2,876,581; 2,876,582 and 2,965,999), the Court finds that the patent in suit is valid. The prior art indicates that inventors sought to solve two separate problems. Schmidt (582) utilized a wire key, while Marsh (999) used nonrotatable plunger. By the use of these keying arrangements, these inventors sought to eliminate the problem of aligning the wire hook in a small hole while fastening the bobber to a line. These two patents would be largely unsuitable for automatic assembly, due to difficulties in aligning the parts.

Another problem is accommodating different diameter fishing line. Cowsert (410) and Schmidt (581) solved this problem by using two or more holes of varying depths in which the free end of the wire hook was receivable.

In contrast to the prior art, plaintiff's patent is directed toward ease of automatic assembly which mandated that the wire hook be receivable in a depression regardless of the alignment of the free end of the hook. Clearly, the prior art did not render the plaintiff's solution obvious. The Court notes that a series of holes arranged in an arc was disclosed in the prior art, and the argument has been made that it would be obvious to remove the partitions between the holes. This argument is not persuasive, as Schmidt (581) illustrates that separate holes were necessary so as to accurately grip fishing lines of different diameters. Were the partitions between the holes removed, the Schmidt (581) patent would not perform its stated purpose. For these reasons, the Court concludes that the plaintiff's device was not obvious in light of the prior art. 35 U.S.C. § 103; Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The other conditions of patentability, 35 U.S.C. §§ 101–102, have not been seriously challenged and the Court therefore finds the plaintiff's patent claims 1 and 2 to be valid.

Turning to the defendant's bobber, the Court finds that the only element distinguishing it from plaintiff's device is a partition in the annular recess in the plunger. Claim 1 of the Lambach patent (Re 26,096) reads in part as follows:

A pair of inner and outer annular rings with an annular recess therebetween in said plunger for receiving said first of said hooked ends of said [shaft] on the inner ring, said first of said hooked end portions having its terminal end extending into the recess between said [rings], said plunger being rotatable while said first hooked end portion is on the inner ring and with its terminal end disposed in said annular recess and said plunger is biased to its maximum extent outwardly of said bore;

The bracketed words are the Court's correction of obvious errors in the wording of Claim 1.

As previously stated, the recess in the defendant's plunger is not a complete annulus, but does form almost a complete circle (approximately 355 degrees of arc). Although not within the literal wording of Claim 1, the Court views the defendant's plunger as falling within the doctrine of equivalents. Graver Tank and Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Montgomery Ward & Co. v. Clair, 123 F.2d 878 (8 Cir. 1941); Ralston Purina Co. v. General Foods Corp., 442 F.2d 389 (8 Cir. 1971). The Court finds that the defendant's bobber is substantially identical in the result obtained, the means of obtaining that result, and the manner in which the different elements operate. In addition,

the Court was not persuaded by the evidence that the partition served any useful purpose. For these reasons, the Court finds that the defendant's bobber infringes Claim 1 of plaintiff's patent. 35 U.S.C. § 271.

 Claim 2 of plaintiff's patent is dependent on Claim 1, and the Court finds that it, too, is infringed by defendant's bobber. The defendant's argument that Claim 2 adds only a non-novel element is specious. A dependent claim need not add a patentable element other than that stated in the independent claim. 37 C.F.R. § 1.75. In fact, two or more inventions may not be claimed in the same patent. 37 C.F.R. § 1.141.

 Even though a patent is valid and infringed, a Court should deny recovery where it is shown that enforcement would strongly conflict with the provisions of the Federal Antitrust Laws. Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563 (1947). The evidence in this case does not establish that the defendant would cease to be an effective competitor; that there are no other solutions to the problem of automatic assembly of bobbers; or that the plaintiff will extort an unreasonable royalty were the patent enforced. There is no doubt that enforcement will give the plaintiff a competitive edge, but the Court does not conclude that illegal, anti-competitive results will inexorably follow. There was absolutely no evidence, outside that establishing the market share enjoyed by the parties, of prior violations of the antitrust laws.

 Turning now to the issues relating to the plaintiff's color trademark, the Court first notes that the plaintiff's mark has been held not registerable on the principle register, 15 U.S.C. § 1052, in the absence of proof of secondary meaning. This Court is extremely hesitant to disagree with the Court of Customs and Patent Appeals which ruled plaintiff's colors unregistrable. The preferred method of contesting that decision is by petitioning the Supreme Court for certiorari, rather than litigating the issue in this Court. 28 U.S.C. § 1256; 15 U.S.C. §§ 1121–1122. Similarly, this Court is reluctant to consider registrability of plaintiff's mark, with proof of secondary meaning, where that issue has not been first presented to the Patent Office. The Court, however, does have the power to "restore cancelled registrations." 15 U.S.C. § 1119. In this regard, plaintiff's colors must qualify as a "trademark" before plaintiff is entitled to registration on the principle register, 15 U.S.C. § 1052. The Lanham Act definition of trademark states that:

> The term "trademark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others. 15 U.S.C. § 1127.

 There is little dispute that color or combination of colors, by itself, cannot constitute a valid trademark. This rule is based on the fear that the supply of appealing colors and combinations would be quickly appropriated. See Campbell Soup Co. v. Armour & Co., 175 F.2d 795 (3 Cir. 1949). Likewise, there is no doubt that a geometric figure of a particular color can constitute a valid trademark. A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710 (1906); Application of Hehr Mfg. Co., 279 F.2d 526 (C.C.P.A.1960). This case, however, involves fishing bobbers of typically spherical design which are typically made of two different colored hemispheres. It cannot be said that the colors of plaintiff's bobbers are used in conjunction with a distinctive geometric shape where the spherical shape and two color format of bobbers is so traditional. Thus, the Court finds that plaintiff's color format is not inherently distinctive.

Even though not inherently distinctive, a trademark is registrable if, through advertising, exclusive use, and the like, it serves, in fact, to identify the

source of the goods. The Lanham Act establishes a period of five years of substantially exclusive use immediately preceding an application for registrability. 15 U.S.C. § 1052(f). In the present case, the Court is presented with considerably less than prima facie evidence. Less than one year after plaintiff began using the colors, defendant followed suit. There is no accounting of advertising monies *specifically* referable to the color format. In addition, the testimony of distributors relative to customer recognition of the color format as distinctively indicating plaintiff as the origin of the bobbers, is unpersuasive. At the time suit was brought, both parties had been using the virtually identical colors for approximately four and one-half years. For these reasons, the Court finds that the plaintiff's color format should not be deemed registrable on the principle register.

■ The Court has also considered whether the plaintiff's color format is protectable under State law. Nebraska has recently enacted a trademark law very similar to the Lanham Act. Neb. Rev.Stat. § 87–101 et seq. (1967). Since plaintiff has not registered under the Nebraska act, it is therefore not entitled to protection thereunder. Neb.Rev.Stat. § 87–121. However, the Nebraska act has a saving clause which preserves common law trademark rights. Such rights are fully explained in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1915), which demonstrates that the common law rules relative to what types of features are protectable as trademarks are virtually identical to the rules stated in the Lanham Act. *See* 15 U.S.C. §§ 1052 and 1091. The Court therefore concludes that, absent secondary meaning, the plaintiff's two color format is not protectable under the common law. Thus, the Court is faced with determining the scope of secondary meaning under Nebraska common law. Relying on Skinner Mfg. Co. v. General Food Sales Co., 52 F.Supp. 432 (D.Neb.1943); Schreiber Mills, Inc. v. O. A. Cooper Co.,

Inc., 87 F.Supp. 674 (D.Neb.1949), the Court is persuaded that the Nebraska common law of secondary meaning is very similar to that enunciated in the Lanham Act. Thus, plaintiff is not entitled to recovery under the common law.

■ Lastly, plaintiff claims recovery under the law of unfair competition. The rationale for denying trademark protection is largely applicable to this contention. The Court is persuaded by the fact that the plaintiff did not establish a substantial period of exclusive use. In essence, the plaintiff discovered a color combination that caught the fancy of consumers, and the defendant quickly followed suit. The Court concludes that plaintiff did not, through diligence, carve out a portion of an established market, but, instead, discovered a new market. *See* Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). For these reasons, recovery for unfair competition will be denied.

Similarly, recovery will be denied under 15 U.S.C. § 1125(a) for the reasons stated in K. B. Germain, Unfair Trade Practices under Section 43(a) of the Lanham Act, 6 Pat.L.Rev. 323 (1974).

■ Defendant's counterclaim under the antitrust laws is unsupported by any evidence, save the fact that the parties are the only domestic manufacturers supplying the domestic plastic fishing bobber market. Each party enjoys approximately 50% of that market. The United States Supreme Court has held that evidence of size alone is not sufficient to state a prima facie case under the antitrust laws. United States v. Grinnell, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Significantly, the defendant has produced no evidence that plaintiff has used its share of the market in an abusive manner to stifle competition.

An order in accordance with the findings of fact and conclusions of law stated herein will be filed contemporaneously herewith.

APPENDIX A

PLAINTIFF'S
EXHIBIT
17

Oct. 11, 1966 F. A. LAMBACH Re. 26,096

FISHING FLOAT

Original Filed July 24, 1963

INVENTOR.

FREDERICK A. LAMBACH

BY

Wallace, Kinyer & Ford

ATT'YS

APPENDIX B

PLAINTIFF'S
EXHIBIT
10

Aug. 14, 1956 C. A. COWSERT 2,758,410
FLOAT

Filed Sept. 21, 1953 2 Sheets-Sheet 1

INVENTOR

CHARLES A. COWSERT

BY

ATTORNEY

APPENDIX C

March 10, 1959 L. SCHMIDT 2,876,581

FISHING LINE FLOAT

Filed April 20, 1954

INVENTOR.

*Ludwig Schmidt*

BY *Victor J. Evans & Co.*

ATTORNEYS

**1152**

APPENDIX D

March 10, 1959 L. SCHMIDT 2,876,582
FISHING FLOAT

Filed Aug. 5, 1954 2 Sheets—Sheet 1

*Inventor*
Ludwig Schmidt

by Hill, Sherman, Meroni, Gross & Simpson *Attys*

APPENDIX E

Dec. 27, 1960 G. M. MARSH 2,965,999
 FISHING FLOAT
 Filed Aug. 8, 1957

Inventor
GERALD M. MARSH

By Hill, Sherman, Meroni, Gross + Simpson Attys