**AIRLITE PLASTICS CO., Appellant,**

v.

**PLASTILITE CORPORATION,**
Appellee.

No. 75–1441.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Dec. 18, 1975.
Rehearing Denied Dec. 23, 1975.

Certiorari Denied April 19, 1976.
See 96 S.Ct. 1672.

Bruce D. Vosburg, Omaha, Neb., for appellant. Conclusion by Mr. Vosburg.

H. Robert Henderson, Des Moines, Iowa, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT, Circuit Judge, and SMITH, Senior District Judge.[*]

VAN OOSTERHOUT, Senior Circuit Judge.

Plastilite Corporation (Plastilite), assignee of the United States Patent No. 3,142,930 (Lambach patent),[1] brought this action in the district court against Airlite Plastics Co. (Airlite) alleging patent infringement, trademark infringement, and unfair competition arising out of defendant's allegedly unauthorized manufacture and sale of fishing bobbers closely resembling those manufactured and sold by plaintiff. Airlite in its answer challenged the validity of the Lambach patent, denied infringement, and counterclaimed under the antitrust laws. Following a trial to the court, the district court[2] held Plastilite's Lambach patent valid and infringed, that Plastilite

had not established a valid statutory[3] or common law trademark based on a color scheme, and that Airlite's counterclaim was unsupported by any evidence. The trial court's Memorandum Opinion is reported at 390 F.Supp. 1141 (D.Neb.1975). We reverse on the ground that claims 1 and 2 set forth in the Lambach patent were obvious within the meaning of § 103 of the Patent Act, 35 U.S.C. § 103.

A detailed description of the Lambach patent, including diagrams, is found in the district court's reported opinion. 390 F.Supp. at 1143, 1149–1153. Briefly, the patent in suit covers the design of a fishing bobber. The claims here disputed[4] involve an annular groove on the top of the bobber plunger into which the free end of a wire hook is receivable. On the bottom of the bobber two parallel embossments or ribs are found which enable a fishing line to be more firmly attached to the bottom of the bobber when the line is threaded into the eye of a wire hook between the two ribs.[5] The annular groove in the plunger is deep enough that a tight bight on a fishing line threaded through the upper wire hook is achieved when the free end of the hook is completely seated on the inner ring of the groove. There is evidence that the improvement represented by the Lambach patent has contributed to the commercial success of the bobber because it is well adapted for mass production. Plastilite has been manufacturing and selling the bobber described in the Lambach patent since 1962. The patent was first issued August 4, 1964. Since 1965 or 1966 Airlite, the defendant, has been manufacturing and selling bob-

[*] TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. United States Patent No. 3,142,930 was reissued in 1966 as No. RE 26,096. Claims 1 and 2, the claims here in question, have remained exactly the same.

2. Honorable Robert F. Denney, United States District Judge, District of Nebraska.

3. Plastilite claimed statutory trademarks under both federal and state (Nebraska) trademark laws.

4. The text of claim 1 of the Lambach patent, upon which claim 2 is dependent, is found in the trial court's reported opinion. 390 F.Supp. at 1146.

5. The trial court's finding of fact No. 11, 390 F.Supp. at 1144, states that bobbers having two parallel ribs or embossments on the bottom were on the market prior to one year before the patent in suit was applied for. Plastilite has not seriously challenged this finding. Such finding invalidates claim 2 for lack of novelty. See 35 U.S.C. § 102(a).

bers similar to the bobber described in the Lambach patent, having a plunger with an annular groove interrupted by a single wall or partition.

On appeal, Airlite contends (1) the Lambach patent is invalid under 35 U.S.C. § 103 because it was obvious at the time it was applied for to a person having ordinary skill in the field of bobber design, (2) Airlite's bobber does not infringe on the Lambach patent, if valid, (3) Plastilite's eight-year delay in bringing this suit bars the action on the laches and collateral estoppel grounds, and (4) Plastilite's knowing failure to disclose pertinent prior art to the Patent Office invalidates the Lambach patent. Because we agree with Airlite that the Lambach patent is invalid for obviousness, we find it unnecessary to consider issues 2, 3, and 4, *supra.*

## SCOPE OF REVIEW

Our scope of review of the district court's finding that the patent in suit is nonobvious was set forth by the Supreme Court in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966):

> While the ultimate question of patent validity is one of law, * * * the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness 'or nonobviousness of the subject matter is determined.

■■■ The "clearly erroneous" standard of review found in Fed.R.Civ.P. 52(a) does not apply in reviewing determinations of obviousness under 35 U.S.C. § 103. *Flour City Architectural Metals v. Alpana Aluminum Products, Inc.,* 454 F.2d 98, 106 (8th Cir. 1972). The ultimate question of obviousness vel non is a matter of law, not fact. *Id.* However, certain "factual inquiries" such as (1) the trial court's determination of the scope and content of the prior art; (2) the trial court's ascertainment of the differences between the prior art and the patent claims at issue; and (3) the trial court's resolution of the level of ordinary skill in the pertinent art are subject to the constraint of Rule 52(a) on review. *Id.*

## SCOPE AND CONTENT OF PRIOR ART

A desirable feature of any fishing bobber is a mechanism whereby a fishing line can be secured to the bobber either securely or for slip line fishing. The prior art with respect to the Lambach patent discloses the use of the hooked pins slideably fitted through a spring driven plunger, with the free. end of the hook being receivable in the plunger in various ways, usually a hole or recess, to secure a firm bight when a fishing line is threaded through the hooked eye of the pin. The Schmidt patent, U.S. No. 2,876,582, cited by the Patent Office in the Lambach patent, teaches the use of two holes or recesses to receive the free end of the hooked pin and spaced 180° apart around the rotatable plunger on which the hooked pin is mounted. Said recesses are of different depths allowing the free end of the hooked pin to seat at different depths, thus forming a loop in the hooked pin through which a fishing line may freely pass when the pin is seated in the shallow recess and providing for a tight bight on a fishing line when the pin is seated in the deeper recess. Another Schmidt patent, U.S. No. 2,876,581, also cited by the Patent Office, provides for a series of circumferentially arranged connected recesses, each of a different depth in the bobber sphere, which allows means for gripping fishing lines of varying diameters when the pin is seated in the respective recesses. The Cowsert patent, U.S. No. 2,758,-410, teaches the use of two recesses on the sphere of the bobber spaced 90° apart and radially away from the wire hook. Again, one recess is more shallow

than the other to provide a secure bight or a freely moving fishing line when the pin is seated in the respective recesses.

There is also evidence in the record that a fishing float known to the parties as the Cowsert (not to be confused with the Cowsert patent, *supra*) or Buckeye bobber was a part of the prior art. This bobber, apparently not patented prior to the Lambach patent, has a 270° arcuate groove or recess on the surface of the plunger into which a free end of a hooked pin is receivable. Between the two ends of the arcuate groove is a partition in which a single conventional recess is found. When the rotatable hooked pin is seated in the latter recess a tight bight is achieved on a threaded fishing line. The depth of the arcuate groove is such that the eye of the hooked pin is raised when seated in the groove, allowing for slip line fishing. The Buckeye bobber also has two parallel embossments on either side of the lower opening of the bobber. By deposition entered into evidence Charles Cowsert testified that Buckeye Bait Corporation, of which he was president and owner, manufactured, sold and displayed the Buckeye bobber in trade shows during the years 1949–1952, more than 10 years before the Lambach patent was applied for. Although the Buckeye bobber in evidence has "Pat. Pend." stamped on the sphere, there is no evidence in the record to indicate that a patent was issued on the bobber.

█ We think that finding of fact No. 16 in the trial court's opinion, 390 F.Supp. at 1144, that the Buckeye bobber was not part of the prior art is clearly erroneous. The trial court discounted Charles Cowsert's deposition testimony at least in part because of the court's belief that the Buckeye bobber was patented and that defendant had failed to produce the patent. This was clearly erroneous. There is no reference in the Cowsert deposition to a patent on the *Buckeye* bobber. The court's reference

to a bobber whose patent had been purchased was actually to Exhibit No. 2 of the deposition, a yellow and white bobber with Dayton, Ohio, stamped on it. Direct corroboration for Cowsert's statement that he sold and manufactured the Buckeye bobber prior to the application for the Lambach patent is found in the deposition of Jerome Buening, the past president of a competitor company, indicating that he had seen the Buckeye bobber when Buckeye Bait Corporation was located in Miamisburg, Ohio. Our examination of the Buckeye bobber,[6] the molds used to make the plunger used in it, and the Cowsert deposition, convinces us that the Buckeye bobber was in fact a part of the prior art when the patent in suit was applied for.

## DIFFERENCES BETWEEN THE PRIOR ART AND LAMBACH PATENT

The trial court found that the prior art patents raised two separate problems: (1) the problem of aligning the wire hook in a small hole while fastening the bobber to a fishing line, and (2) accommodation of different diameter fishing lines. The Cowsert and Schmidt (No. '581) patents solved the latter problem by using two or more holes of different depths into which the end of the wire hook was receivable. The trial court found that the alignment problem had not been solved by the patents cited as prior art. The Schmidt patent, No. '581, teaching the use of a series of holes arranged in an arc where the free end of the wire hook could be selectively recessed in any of the holes was distinguished on the ground that the separate holes functioned only to grip fishing lines of different diameters and not to facilitate alignment of the wire hook.

The trial court found it unnecessary to determine the difference between the Buckeye bobber and the patent in suit because it considered the Buckeye bobber not to be a part of the prior art.

---

6. An appellate court has the right to examine and interpret exhibits for itself. *American In-fra-Red Radiant Co. v. Lambert Industries, Inc.,* 360 F.2d 977, 988 (8th Cir. 1966).

Our finding that the Buckeye bobber was a part of the prior art requires us to determine the differences between the two. The groove on the plunger of the Buckeye bobber is incomplete but in excess of 270°. The groove is not as deep as that found in the patent in suit, thus not allowing the wire hook to seat completely on the inner ring or lip of the groove as it does in the patent in suit. There is evidence that the shallow groove in the Buckeye bobber functions to allow slip line fishing while the deeper recess between the ends of the arcuate groove provides for a tight bight on the fishing line. There is other evidence, however, indicating that tight line fishing may be achieved when the hook is seated in the arcuate groove and an appropriate diameter fishing line is used. The annular groove in the patent in suit only allows for tight line fishing. The alignment problem exists in the Buckeye bobber when the hook is to be seated in the single recess. There is very little alignment problem in the Buckeye bobber when the hook is to be seated in the arcuate groove. Plaintiff's patent is directed toward ease of automatic assembly which necessitates that the wire hook be freely receivable in the head of the plunger regardless of its alignment. There was expert testimony that the design of the Buckeye bobber does not lend itself very well to automation.

## INVALIDITY OF THE PATENT

■ The trial court made no finding with respect to the level of ordinary skill in the art of fishing float design at the time the patent in suit was applied for. Both parties presented expert testimony on whether a person skilled in the art of bobber design would have found the use of an annular ring on a bobber plunger to be an obvious solution to the problems stated, *supra*. Such testimony is conflicting. Our review of the entire record convinces us that the level of skill in fishing float design during the time in question was such that an annular

groove of the type found in the patent in suit was an obvious solution to the problems facing persons skilled in the art of fishing float design. Our decision is based on (1) the prior art, especially the Buckeye bobber, and (2) evidence of the level of skill possessed by those skilled in the art of fishing bobber design.

■ We are convinced that the arcuate groove in the plunger of the Buckeye bobber anticipates the annular groove claimed in claims 1 and 2 of the Lambach patent. We think it would be obvious to a person having ordinary skill in the field to improve on the arcuate groove found in the Buckeye bobber plunger by increasing its depth and extending it from 270° to 360°. In *American Infra-Red Radiant Co. v. Lambert Industries, Inc.,* 360 F.2d 977, 987 (8th Cir. 1966), we said:

> We have held in the past and we continue to hold that "[i]nvention will not be decided on the narrow issue of degree", and that the mere changing of form, proportions, or size will not alone constitute "invention." [Citation omitted.] This is true even though the change brought about better results.

We think the differences between the Buckeye bobber and the patent in suit are merely ones of "form, proportions, or size." It matters not that the Lambach bobber works better. It doubtless is an improvement in the art. Nevertheless, an improvement which is obvious to those skilled in the art is not entitled to protection. The Lambach bobber is such an improvement.

Even if the Buckeye bobber were not part of the prior art, we think the improvement represented by the Lambach patent was obvious to those skilled in the art. Only two of the testifying witnesses could be classified as experts in fishing float design. Defendant's witness Sam D. Mauro, an employee of defendant (tool room foreman), testified that an obvious solution to the automation of bobber assembly problems would have been the use of an annular groove in the

plunger. Plaintiff's expert, Donald Orr, a machine shop operator, was equivocal or doubtful when asked on cross-examination whether the annular groove was an obvious solution to the automation problem. We think the evidence supports our view that use of an annular groove in the plunger of a fishing float was an obvious solution to the problems facing the industry.

In *Graham v. John Deere, supra,* the Supreme Court said that "secondary considerations [such] as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." 383 U.S. at 17–18, 86 S.Ct. at 694. There is evidence that the Lambach patent and defendant's allegedly infringing bobber contributed greatly to the respective company's commercial success. However, as we stated in *American Infra-Red Radiant Co. v. Lambert Industries, Inc., supra,* "[c]ommercial success without invention undoubtedly cannot support a patent." 360 F.2d at 989. Commercial success is not itself decisive. *Id.* We think the patent in suit was so obvious that its commercial success does not overcome the obstacles presented by 35 U.S.C. § 103.

We hold that the Lambach patent, U.S. No. 3,142,930 (Reissue No. 26,096) fails to meet the nonobvious test found in 35 U.S.C. § 103. Such holding makes it unnecessary to consider the infringement and other issues raised.

Reversed.