469 F.Supp. 1249 (1979)
Edmond L. SING, Plaintiff,
v.
CULTURE PRODUCTS, INC., James G. Wright, Defendants.
No. 77-360C(3).
United States District Court, E. D. Missouri, E. D.
May 7, 1979.
As Amended May 15, 1979.
*1250 John K. Roedel, Jr., Koenig, Senninger, Powers & Leavitt, St. Louis, Mo., John C. McNett and Thomas Q. Henry, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., for plaintiff.
McPherson D. Moore and Edward H. Renner, Rogers, Eilers & Howell, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Edmond L. Sing brought this suit, pursuant to 28 U.S.C. § 1338, alleging patent infringement. Defendants raised numerous affirmative defenses by way of answer; defendants' counterclaim was dismissed prior to trial. On January 27, 1978, trial herein was bifurcated by order of this Court. Accordingly, the Court will rule only on the question of patent validity and infringement at this time.
This cause was tried to the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff Edmond L. Sing is an individual and resident of the state of Indiana. Defendant James G. Wright is an individual and resident of the state of Missouri. Defendant Culture Products, Inc. is a corporation organized and existing pursuant to the laws of the state of Missouri with its principal place of business in the state of Missouri.
2. United States Letters Patent No. 3,968,256 was issued to Sing on July 6, 1978. Said patent provides:
The invention claimed is:
1. A convenient method for improving flavor and keeping characteristics of cottage cheese which comprises:
adding to the cottage cheese, or its creaming mixture, sufficient culture preparation of Streptococcus diacetilactis, said culture preparation selected from the group consisting of freeze dried culture, frozen concentrated cells, and freeze dried concentrated cells, to cause a concentration of cells in the cottage cheese from 1.0 × 106 cells per gram to 2 × 108 cells per gram of cottage cheese.
2. The method of claim 1 which additionally comprises the step of:
keeping the resultant mixture of cottage cheese and Streptococcus diacetilactis cooled to prevent significant growth of bacteria.

*1251 3. The method of claim 2 in which the culture preparation is freeze dried concentrated cells.
4. The method of claim 2 in which the culture preparation is frozen concentrated cells.
5. The method of claim 2 in which the culture preparation is freeze dried culture.
6. A method for improving flavor and keeping characteristics of cottage cheese which comprises:
adding to the cottage cheese or its creaming mixture sufficient culture preparation of Streptococcus diacetilactis, said culture preparation containing over 3 × 109 cells per gram, to cause a concentration in the cottage cheese of from 1.0 × 106 cells per gram to 2 × 108 cells per gram of cottage cheese, and keeping resultant mixture of cottage cheese and Streptococcus diacetilactis cold to prevent significant growth of bacteria.
7. The method of claim 3 in which the freeze dried concentrated cells are of a standard concentration.
8. A method for improving flavor and keeping characteristics of cottage cheese which comprises:
adding to the cottage cheese sufficient freeze dried concentrated cells of S. diacetilactis to cause a concentration of cells of about 1 million to 200 million per gram of cottage cheese.
9. A method for improving flavor and keeping characteristics of cottage cheese which comprises:
adding to the cottage cheese sufficient frozen concentrated cells of S. diacetilactis to cause a concentration of cells of about 1 million to 200 million per gram of cottage cheese.
10. The method of claim 4 in which the frozen concentrated cells are of a standard concentration.
11. The method of claim 10 in which the standardized frozen concentrated cells are prepared by the additional steps of centrifuging a culture, removing the supernatant, adding a buffered diluent to the resulting paste to adjust the cell concentration to a standard concentration, and quick freezing the standardized cells to a temperature below -10°F.
Defendants have had knowledge of the patent since at least July 14, 1976.
3. This patent reveals a process for the preparation of cottage cheese by use of streptococcus diacetilactis ["S.d."]. The addition of S.d. to cottage cheese had previously been discovered as a means to improve flavor and shelf life. Prior to the development of Sing's process, however, dairies would culture the S.d. prior to its addition to the cottage cheese. The addition of the cultured S.d. to cottage cheese required dairies to engage in the technically difficult task of properly culturing the S.d., thus requiring the employment of the necessary personnel. Moreover, off-flavors have resulted, there is a risk of contamination, and there is a transportation and storage problem created by the substantial volume of the cultured S.d. By virtue of the Sing process, the S.d. can be added, in its concentrated form, directly to the cottage cheese in order to obtain a proper concentration.
4. On January 25, 1971, plaintiff applied for a patent. Plaintiff was granted various extensions of time in which to respond to actions by the Patent Office; ultimately, the time for response was extended to June 30, 1973, a Saturday. A second application was filed on Monday, July 2, 1973. The Patent and Trademark Office granted plaintiff an effective filing date corresponding to the filing date of the first application; it would appear that said Office considered the second application to be a proper continuation of the first application. The original examiner denied the application. The Board of Appeals, however, reversed the examiner and found that the Sing Process made "an unobvious contribution" to the prior art. A Canadian patent had issued earlier on the same claims.
5. After the filing of the patent application, but before the issuance of the same, Sing met with defendant Wright. Wright had established his own company, defendant *1252 Culture Products, Inc., to sell products to the dairy industry. At the meeting, the parties discussed a possible business relationship but no agreement was reached. Following the meeting, Sing sent defendants a packet of information on the Sing process, including instructions therefor.
6. Prior to the issuance of the patent, plaintiff sent a letter to various dairies which stated:
We would like to inquire whether the procedure of adding viable S. diacetilactis concentrate to finished cottage cheese is being used in your operation for the improvement of flavor and shelf life.
The patent for this procedure is due to issue to us in the very near future. We are informing you of the imminent issue of this patent in order for you to take whatever steps you feel appropriate to avoid liability to us under the patent.
If you are interested in obtaining permission to use the patented procedures, after the date of issuance, it will be necessary for you to obtain the right to do so from us.
The evidence failed to establish that defendant lost any customers as a result of this letter or that any dairies were deterred in their use of S.d. as a result thereof.
7. After issuance of the patent, plaintiff sent a packet of materials to customers and prospective customers, enclosing a copy of the patent and explaining the same. The evidence failed to establish bad faith or malice on the part of the plaintiff in connection with these letters.
8. Plaintiff obtained his supply of frozen concentrate of pure S.d., which is used in the patent, from Great Lakes Biochemical Co., a culture supplier. Great Lakes supplies S.d. at the prescribed cell per gram concentration in accordance with Sing's patent. The product, called Process 800, is marketed by Vivolac Cultures Corporation. Sing is executive director of Vivolac.
9. Upon issuance of the patent, plaintiff instructed Robert Stern of Great Lakes Biochemical Co. to place the patent number on the label of the can of Process 800 product. Stern did so. Upon receipt of an objection, the label was immediately changed to read "for use in the method of U.S. Patent No. 3,968,256". Customers who purchased Process 800 received directions which instructed that the product was for use in the process covered by the patent. The evidence failed to establish that the product could be used except in accordance with the patented process.
10. In late 1975, defendant Wright approached Great Lakes and obtained the identical product. Defendants labeled the product Lacto-Life, drew up a set of directions for its use which is identical in all important respects to the instructions issued by plaintiff, and commenced sale of the product.
11. Wright's testimony concerning his alleged discovery of the process was totally unbelievable. The Court finds from the evidence adduced herein that defendants deliberately and intentionally appropriated plaintiff's invention as their own. Shortly after plaintiff had supplied defendants with information on the process, defendant Wright, who lacked any expertise in this field, claimed to discover the identical process even though numerous experts in the area had been unsuccessful in their attempts to solve the problems associated with the addition of S.d. to cottage cheese. Defendant Wright's claim, that he discovered the process through experimentation in his own kitchen, is totally implausible.
12. Sing offered defendants the opportunity to become a licensing agent on the same terms under which Vivolac operated; defendants refused.
13. Defendants' customers use the Sing process but do not pay a royalty to Sing. Two of defendants' customers used Lacto-Life for short periods of time in the production of sour cream; such efforts have been abandoned, however. As a result, all of defendants' customers use Lacto-Life for the making of cottage cheese in the same manner as set forth in the Sing patent.
14. The Sing process is used in the production of 100 million pounds of cottage cheese per year. The return rate of cottage *1253 cheese, due to spoilage, has been drastically reduced. Cottage cheese manufactured by use of the Sing process has been judged to be the best quality cottage cheese in a nationwide contest of the American Cultured Dairy Products Institute.
15. Defendants' customers have used defendants' Lacto-Life to produce a large amount of cottage cheese by use of the Sing process. The instructions provided with Lacto-Life are virtually identical to those provided by plaintiff and Vivolac, and defendants were aware of the same. Lacto-Life has an S.d. cell concentration within the range set forth by plaintiff in his patent and the use of Lacto-Life in accordance with defendants' instructions results in its concentration in cottage cheese within the range set forth in the Sing patent. The evidence established that Lacto-Life has no substantial use except for its use in connection with the Sing process, and thus is not a staple article suitable for a substantial non-infringing use. Only two isolated incidents of use of Lacto-Life in the manufacture of sour cream were shown; such usage was short-lived and has been discontinued. Moreover, Lacto-Life's label does not indicate the type or concentration of bacteria contained therein. Thus, customers would not know how to use the product except in accordance with its instructions; the instructions refer only to its use in the production of cottage cheese in accordance with the process invented by plaintiff.
16. Defendants have entered into agreements with at least four dairies, including two of their largest customers, to indemnify said customers from patent infringement claims resulting from the use of Lacto-Life.
17. Plaintiff has not attempted to tie his patent to the purchase of concentrated S.d. from Vivolac. Royalty payments were determined on the basis of the amount of concentrated S.d. sold to customers because of the convenience of such computation. The evidence establishes that customers were eventually, although not originally, informed that royalties were due only for the use of the product in connection with the patented method. The evidence, however, failed to establish that the concentrated S.d. as sold by plaintiff could be used in any manner other than in connection with the patented process.
18. The prior art cited to this Court by the parties includes the following:
a. The Babel and Mather procedure, United States Patent No. 2,971,874. This method used Leuconostoc citrovorum bacteria, added to the creaming mixture, to improve flavor and shelf life. The method required the incubation of the bacteria prior to addition. Problems of contamination, trained personnel and time resulted in its limited usage.
b. The Lundstedt method, United States Patent No. 3,048,490. This method uses S.d. bacteria, added to finished cottage cheese, to improve flavor and shelf life. It calls for the incubation of the bacteria, using citrated whey as the culture medium. The medium is time-consuming and difficult. It did not receive widespread adoption and is presently not used by dairies in the United States.
c. The Moseley, Elliker and Sandine method, United States Patent No. 3,323,921. This method also calls for the addition of S.d. to the creaming mixture of the cottage cheese. It also requires the incubation of the bacteria, thus being subject to the same problems of time consumption, contamination, and necessary trained personnel. Substantial efforts have been made to achieve acceptance of this method by the dairy industry. No significant usage resulted, however, because of the difficulties involved and the tendency for off-flavors to result from undesired by-products of the bacteria's growth.
d. The Elliker article. This article discloses that use of certain cell counts of S.d. in cottage cheese would give improved shelf life and flavor. The article does not reveal, however, the amount of concentrate needed to attain the desired shelf life.
e. The Lundstedt article. This article discusses the production of aroma in cottage cheese through the growth of citrate fermenting bacteria of different species. *1254 Its relevance to the patent in question is minimal.
f. The Lundstedt-Fogg article. The article discusses the development of aroma and flavor in cottage cheese through the addition of S.d. It also discusses an experiment to determine if a certain substance could be converted into diacetyl. Lundstedt testified at trial that it had no relevance to plaintiff's discovery.
g. The Duggan article. This article reveals the development of a method for the preparation of a frozen concentrate of Lactobacillus acidophilus, a milk substance. Its relevance to plaintiff's patent is only tangential.
h. The Christensen patent, United States Patent No. 3,483,087. This patent discloses a method for cultivating lactic acid-producing bacteria, including S.d., in a buffered culture medium.
The testimony of the experts herein, including Lundstedt who is universally recognized as the leading expert in the use of S.d. in the manufacture of cottage cheese, conclusively establishes that plaintiff's discovery was not anticipated in the prior art. Although the individual components of plaintiff's discovery, that is, the addition of S.d. to cottage cheese in specified proportions, and the making of frozen concentrates of S.d., were not new, the combination of such elements by plaintiff resulted in a novel invention, not obvious to a person of ordinary skill in the art at the time of discovery.
19. The language of the patent is sufficient to allow persons of ordinary skill in the art to practice the invention. The best mode of practicing the invention is also disclosed therein.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 28 U.S.C. § 1338.
Title 35 U.S.C. § 282 provides that "[a] patent shall be presumed valid". Moreover, "[t]he burden of establishing invalidity of a patent shall rest on a party asserting it". See also, Woodstream Corporation v. Herters, Inc., 446 F.2d 1143 (8th Cir. 1971); International Telephone and Telegraph Corporation v. Raychem Corporation, 538 F.2d 453 (1st Cir. 1976), cert. denied, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976); Reinke Manufacturing Company, Inc. v. Sidney Manufacturing Corporation, 594 F.2d 644 (8th Cir. 1979).
Plaintiff alleges herein that defendants are guilty of contributory infringement and of inducing infringement of plaintiff's patent. Title 35 U.S.C. § 271 provides in relevant part:
(b) Whoever actively induces infringement of a patent shall be liable as an infringer.
(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.
In order to establish that defendants actively induced the infringement of plaintiff's patent, plaintiff must establish that defendants purposely caused, urged or encouraged another individual to infringe plaintiff's patent. Honeywell, Inc. v. Metz Apparatewerke, 509 F.2d 1137 (7th Cir. 1975); Watson Packer, Inc. v. Dresser Industries, Inc., 193 U.S.P.Q. 552 (N.D.Tex.1977). These actions must be taken "with the knowledge of the likely infringing result". Burlington Industries, Inc. v. Exxon Corporation, 379 F.Supp. 754, 757 (D.Md.1974). See also Saf-Gard Products, Inc. v. Service Parts, Inc., 370 F.Supp. 257, 272 (D.Ariz.1974).
A claim of contributory infringement requires that plaintiff establish (1) that defendants sold a material to be used in a patented process; (2) that said material constituted a material part of the patented process; (3) that defendants knew the material to be especially adapted for use in the *1255 infringement of such patent; and (4) that the material did not constitute a staple article suitable for substantial noninfringing use. Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Furthermore, there can be no contributory infringement without a showing of direct infringement as a result of the actions of defendants. Deepsouth Packing Co., Inc. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); Nordberg Mfg. Co. v. Jackson Vibrators, Inc., 153 U.S.P.Q. 777 (N.D.Ill.1967).
This Court has found that defendants' customers infringed plaintiff's patent by their use of defendants' Lacto-Life Culture Dressing. It is undisputed that defendants sold such dressing for use in the preparation of cottage cheese, and that the dressing, which was nothing more than an S.d. concentrate, was a material part of plaintiff's patented process. Defendants clearly knew that the S.d. concentrate was especially adapted for use in the infringement of plaintiff's patent since plaintiff had revealed his patented process to defendant Wright, defendants' product was identical to the product sold by plaintiff in connection with his patented process, and defendants' instructions mirrored the patented process. The Court has further found that defendants' Lacto-Life Culture Dressing was not a staple article suitable for substantial noninfringing use. Under such circumstances, the Court must conclude that defendants are liable for contributory infringement. Cathodic Protection Service v. American Smelting & Refining Co., 190 U.S.P.Q. 254 (S.D.Tex.1975); Grinnell Corporation v. American Monorail Company, 285 F.Supp. 219 (D.C.S.C.1967); Saf-Gard Products, Inc. v. Service Parts, Inc., supra.
The Court further concludes that defendants induced their customers to infringe plaintiff's patent in violation of 35 U.S.C. § 271(b). Defendants' product was not labeled as to its contents; thus, defendants' customers could only use the product in accordance with the instructions provided. The method for use set forth in the instructions resulted in the direct infringement of plaintiff's patent. Defendants agreed to indemnify at least four dairies, including two of their largest customers, against patent infringement claims asserted by plaintiff. Such evidence leads this Court to conclude that defendants actively induced infringement of plaintiff's patent. Honey-well, Inc. v Metz Apparatewerke, supra; Saf-Gard Products, Inc. v. Service Parts, Inc., supra.
Title 35 U.S.C. § 101 provides:
Whoever invents or discovers any new or useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . .
Title 35 U.S.C. § 103 further provides:
A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
In order to make the determination of patentability, this Court must make "a comparison between the subject matter of the patent, or patent application, and the background skill of the calling". Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 12, 86 S.Ct. 684, 691, 15 L.Ed.2d 545 (1965).
Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. Id. at 17-18, 86 S.Ct. at 694.
*1256 The prior art revealed that the addition of specified amounts of cultured S.d. to cottage cheese resulted in improved flavor, aroma and shelf life. The prior art also revealed that bacteria could be freeze-dried, frozen concentrated, and freeze-dried concentrated. The prior art, however, did not reveal in any manner that freeze-dried, frozen concentrated, or freeze-dried concentrate of S.d. could be added directly to the cottage cheese or its creaming mixture in order to obtain the known benefits of the addition of S.d. without the necessity of culturing the same.
Since plaintiff's patent consists of a combination of known elements,
. . . one of the factors this court must look for in determining whether the patents meet section 103 requirements is synergism: that which results "in an effect greater than the sum of the several effects taken separately". [citation omitted] Reinke Manufacturing Company, Inc. v. Sidney Manufacturing Corporation, supra, 594 F.2d at p. 648.
See also United States v. Adams, 383 U.S. 39, 50, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966) ("It begs the question ... to state merely that magnesium and cuprous chloride were individually known battery components. If such a combination is novel, the issue is whether bringing them together [was] taught by . . . the prior art".); International Telephone and Telegraph Corporation v. Raychem Corporation, supra, at 457; Deepsouth Packing Co., Inc. v. Laitram Corp., supra at 521; Bryan v. Sid W. Richardson, Inc., 254 F.2d 191 (5th Cir. 1958).
It is the Court's firm conclusion that plaintiff's discovery was patentable. Plaintiff combined known elements in such a manner as to achieve a result which was clearly "greater than the sum of the several effects taken separately". Plaintiff's invention permitted dairies to enjoy the known benefits of the addition of S.d. without bearing the prior burdens associated with said culture. Lundstedt, the undisputed expert in the field, testified that plaintiff's invention was not obvious, and was novel. It is clear that this invention could not have been obvious to one only of ordinary skill in the art. The commercial success of the invention, and the long felt need for the same, cannot be disputed and only buttresses this Court's conclusion that the discovery was truly nonobvious. See Grinnell Corporation v. American Monorail Company, supra; Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923); International Telephone and Telegraph Corporation v. Raychem Corporation, supra; Johnson & Johnson v. C. B. Stenvall, Inc., 193 F.Supp. 128 (S.D.N.Y.1961); Diamond International Corporation v. Walter Hoefer, 289 F.Supp. 550 (D.Md.1968).
Defendants have raised a variety of defenses herein. While the Court has carefully reviewed all the contentions made, only a few merit any discussion.[1]
Defendants contend that the Patent Office did not consider the most significant prior art. In particular, defendants contend that the Patent Office did not consider the Lundstedt-Fogg article, the Lundstedt article, the Duggan et al. article and the Elliker et al. article; accordingly, defendants argue that plaintiff is not entitled to the presumption of validity and that the patent is invalid. The Court has reviewed the literature in question. It is the Court's conclusion that such literature does not affect the nonobviousness of plaintiff's invention, and does not destroy the presumption of validity that attaches to the patent.
Defendants also argue that various actions taken by plaintiff both before and after the issuance of the patent amount to *1257 patent misuse and thus preclude enforcement of the patent. Specifically, defendants complain of the letters which were sent to customers and potential customers before and after the issuance of the patent. The evidence failed to establish that defendants lost any potential customers as a result of the pre-patent letter, or that any dairy ceased its use of S.d. as a result thereof. The Court further concludes that the post-patent letter was not improper. Cf., Bryan v. Sid W. Richardson, Inc., supra; Jenkel-Davidson Optical Co. v. Roberts Instrument Co., 137 U.S.P.Q. 644 (E.D.Mo. 1963); Ronson Patents Corporation v. Sparklets Devices, 112 F.Supp. 676 (E.D.Mo. 1953).
Defendants complain that plaintiff's invoices, for the sales of concentrated S.d., failed to indicate that the price included a royalty for the use of the patented method, and that for at least a year after the patent had issued, failed to indicate that royalties were payable only if the patented method were actually used. The evidence totally failed to establish that any of plaintiff's customers in fact used the S.d. in a manner not covered by the patent. Indeed, it would appear highly unlikely that such customers would have done so, in view of the fact that the accompanying instructions only set forth the patented process. Furthermore,
Since the doctrine of misuse is equitable in nature, based on the public policy against allowing one who wrongfully uses a patent to enforce it during the period of misuse, it has long been recognized that upon dissipation or purge of the effects of such misuse the patentee may thereafter enforce his lawful monopoly. [citations omitted] Furthermore, there is no time bar against such a purge. A patentee may revive enforceability of his patent by correcting a misuse after commencement of an action for infringement, [citations omitted] or even after judgment. [citation omitted] Ansul Company v. Uniroyal, Inc., 306 F.Supp. 541, 560 (S.D.N.Y.1969).
Thus, assuming arguendo that plaintiff's failure to indicate that the price included a royalty payment constituted misuse, but cf., Noll v. O. M. Scott & Sons Company, 467 F.2d 295 (6th Cir. 1972); Ansul Company v. Uniroyal, Inc., supra, such failure would not serve to invalidate the patent, or preclude a determination of infringement herein. It would merely affect the computation of damages which is not presently before the Court.
Defendants object to plaintiff's practice of measuring the royalties due by the sale of concentrated S.d. It is the Court's conclusion that under the circumstances herein such practice is permissible. Cf., Mutchnik v. M. S. Willett, Inc., 186 U.S.P.Q. 427 (Md. App.1975) and cases cited therein. Chandler v. Stern Dental Laboratory Co., 335 F.Supp. 580 (S.D.Tex.1971), cited by defendants, is clearly distinguishable.
Lastly, defendants contend that plaintiff mismarked the concentrated S.d. such that it, rather than the process, appeared to be patented. The evidence did reveal that the product was marked with the patent number, without any specification that it was the process and not the product which was patented. Such labeling, however, was quickly changed to reflect that the product was for use in connection with the patented process. This record is insufficient to warrant a conclusion that plaintiff misused his patent. Cf., Ansul Company v. Uniroyal, Inc., supra at 566; Freeman Manufacturing Company v. Federal Dept. Stores, Inc., 195 F.Supp. 951 (E.D.Mich.1961).
Accordingly, the Court concludes that plaintiff's patent is valid, that plaintiff has not misused his patent, and that defendant has contributorily infringed said patent as well as induced infringement of the same.[2] *1258 The Court further concludes that the facts in this case support a judgment by this Court of increased damages "up to three times the amount found or assessed". 35 U.S.C. § 284. Accordingly, after a hearing on the issue of damages, this Court shall award damages in such amount as it deems appropriate. It is the Court's further conclusion that this case is not so exceptional as to justify an award of attorney's fees. 35 U.S.C. § 285; Purer & Company v. Aktiebolaget Addo, 410 F.2d 871 (9th Cir. 1969).
NOTES
[1] In response to plaintiff's claims herein defendants asserted what surely must be every possible attack upon plaintiff's patent. As a result, this cause required an inordinate expenditure of this Court's time. The Court was required to review well over 300 pages of briefs and to research in excess of 100 cases cited by the parties. The parties would have been better advised to have focused their efforts upon those issues which were genuinely raised by the facts herein, instead of pursuing every conceivable claim and side issue. In a case as factually complex as this one, such practice is a disservice to this Court.
[2] This Court is aware of the strict scrutiny applied to patent cases by the United States Court of Appeals for the Eighth Circuit. See Reinke Manufacturing Company v. Sidney Manufacturing Corporation, 594 F.2d 644 (8th Cir. 1979); Clark Equipment Co. v. Keller, 570 F.2d 778 (8th Cir. 1978); Airlite Plastics Co. v. Plastilite Corporation, 526 F.2d 1078 (8th Cir. 1975); Bolt, Beranek and Newman, Inc. v. McDonnell Douglas Corporation, 521 F.2d 338 (8th Cir. 1975); but see Farmhand, Inc. v Lahman Manufacturing Co., Inc., 568 F.2d 112 (8th Cir. 1978). Nevertheless, it is the Court's firm conclusion based upon all the evidence adduced herein that this patent is valid and deserving of judicial enforcement.